# EXHIBIT 4

Letter to Stracher
(Counsel for Tiller Russell)
April 22, 2020

April 22, 2020

VIA FIRST CLASS MAIL, EMAIL and

CERTIFIED MAIL, RRR

Cameron Stracher

51 Astor Place, 9th Floor

New York, NY 1003

@stracherlaw.com

Dear Mr. Stracher:

Mr. Kuykendall served his country well for 30 years: Two years in the U.S. Army; Five years with the U.S. Border Patrol; Seven years as a U.S. Customs Investigative Agent; and 16 years with the DEA, retiring in 1989. Over 30 years of government service stands as a testament to this man's credibility. Since then, he has continued to work and has an unsullied record. Again, please do not publish any false statements or make any false inferences about Mr. Kuykendall.

Your letter illustrated several points and asked for details that should be considered before your client publicizes false information about Mr. Kuykendall, namely:

1. You criticized my response to Mr. Russell's letter because it came four months after Mr. Kuykendall took his own defense denying all allegations in Mr. Russell's letter. Your criticism about the timing of my letter illustrates how outrageous your client's investigation, occurring **35 years** after the events leading to Mr. Camarena's murder, appears. If a lawyer letter sent four-months following Mr. Kuykendall's response to Mr. Russell's letter is tardy in your opinion, your client's 35-year investigative delay appears preposterously late by the same metric. This serves as another reason why publication of Mr. Russell's work should be stopped.

2. You dismiss denials from an honest man, while upholding statements made by non-credible witnesses that come 35 years after the events. Your dismissals of Mr. Kuykendall's denials establish that your client appears too ready to run with non-credible sources. His failure to assess the credibility of these sources establishes his actual malice given that the presumed sources of these fabricated statements are former Mexican police officers and bodyguards of cartel members. As explained in 3 below, these presumed sources cannot be considered credible given their involvement with both Mexican police and cartels.

3. No names were provided in your client's letter to assist Mr. Kuykendall's memory about the identities of the false witnesses referred to in Mr. Russell's letter. Obviously, names would help here. Still, you criticize Mr. Kuykendall's failure to provide any specific information. Your client

has access to all the specific information he needed in the book Mr. Kuykendall published, *O Plata o Plomo?: Silver or Lead? The Abduction and Murder of DEA Agent Kiki Camarena*. This book establishes that the real impediment to truth were Mexico's corrupt police, the DFS, the MFJP, and the GOM, all of which provided heads-up to Mexican drug cartels whenever the DEA was in pursuit of the cartels, including during the investigation into Kiki Camarena's disappearance. Yet, your client has relied on statements from individuals who were under the employ of these same entities, and who apparently provided security for the cartels as side jobs. Again, please rethink your headlong launch in defense of your client and consider giving Mr. Russell the sound advice to back away from the false narratives these sources apparently have provided to him.

4. This same sound advice should be rendered given your own admission that Russell's letter asked questions that made no sense, particularly with respect to the statement, "please explain why you testified on behalf of Ruben Zuno-Arce in 1992." Apparently, you have discovered what we knew: Mr. Kuykendall did not testify at all in this trial. So, you then explain your client's sloppy research by saying that Mr. Kuykendall testified in 1990. He did. As we described, his testimony was truthful. It portrayed Mr. Zuno-Arce in a negative light with respect to his trafficking history. The book also contains details about Mr. Zuno-Arce and should be consulted for Mr. Kuykendall's descriptions contained therein. However, your client's letter displays a bias against Mr. Kuykendall that destroys his journalistic objectivity: He described Mr. Kuykendall as having "testified **on behalf of** Ruben Zuno-Arce in **1992**, when Mr. Arce was being prosecuted for his role in Mr. Camarena's murder, a charge on which you know he was ultimately convicted." (Emphasis added.) This telling, false narrative about Mr. Kuykendall concerning testimony that never occurred establishes more evidence of Mr. Russell's biases and consequent actual malice: Mr. Russell so wants to believe that Mr. Kuykendall supported Zuno-Arce (and that the jury discredited this support by convicting him) that he invented Mr. Kuykendall's 1992 testimony to support his beliefs. This invention smacks of actual malice.

5. Referring again to the lack of credible research performed by your client, Mr. Russell asked Mr. Kuykendall for information about a meeting occurring at "American Motors hotel." There was no such place in Guadalajara, Mexico. We purposely did not limit Mr. Kuykendall's denial to false events occurring at a place that we knew that did not exist. We made Mr. Kuykendall's denial global. However, this also illustrates that your client's research has been sloppy. Amazon should consider how Mr. Russell's sloppiness likely tainted his entire docuseries.

6. Mr. Kuykendall had no contact, personal or otherwise, with any of the major drug traffickers in Guadalajara, except for Rafael Caro-Quintero. Mr. Kuykendall saw him after he had been arrested in Costa Rica and returned to Mexico under the custody of Mexican law enforcement authorities. Mr. Kuykendall witnessed the interviews and interrogations of Rafael Caro. He has not seen him in person since. Mr. Kuykendall's only interest in the major drug traffickers was for the purpose of investigations of their activities with the goal of disrupting those activities and damaging their illicit and illegal activities. Anyone who says differently is, in the words of Mr. Kuykendall, "a blatant liar."

7. You have asked for additional evidence of unreliable information about statements made by Russell's sources, but you and Mr. Russell have not disclosed who these sources were.  Without these disclosures, it is difficult to respond with specifics about anyone.  However, Mr. Kuykedall believes these undisclosed sources to be alleged witnesses called in to audition as testifiers, and others of their ilk.  As to a single potential source, we know that one witness was granted immunity with respect to his involvement in the abduction of four Jehovah's Witnesses who disappeared at around the same time as Kiki Camarena's abduction and murder.  In other words, there is reason to believe that one of these undisclosed witnesses likely confessed to a role in the abduction of these four missionaries, whose only crime was spreading word of their religious beliefs in Guadalajara.  If this is one of the stalwarts of Mr. Russell's story, he should be ashamed of himself for sponsoring this known criminal's lies.

8. You have also asked for proof that these undisclosed sources' stories about Mr. Kuykendall were discredited in trial.  For this, I refer you to the convictions in Mexico and U.S. courts of those found guilty for Kiki Camarena's abduction and murder.  Mr. Kuykendall was never a suspect in any crime and considerable time and resources were spent by the governments of two nations investigating these crimes.  In addition, we suspect that Mr. Russell visited DEA agents and U.S. government officials to discuss these undisclosed sources' fabrications with them.  Mr. Kuykendall has not been contacted by federal agents seeking information about these fabrications.  These Mexico and US convictions, together with the absence of any action by U.S. or Mexican authorities against Mr. Kuykendall provide the details you seek.  Mr. Russell's sources have been determined to be non-credible.  Moreover, in the 1990 trial, federal prosecutors closed by arguing:  "The tentacles of this cartel extended far beyond the limits of the city, it extended to the heart of the [Mexican] government."  The jury certainly believed these sentiments.  The evidence from these trials also establishes that your undisclosed sources lack credibility based upon their envelopment by these same so-called tentacles.

9. Finally, we note that following Zuno-Arce's 1992 conviction, a government witness, Hector Cervantes Santos, admitted to perjuring testimony.  Another government witness' scientific methods were questioned.  These witnesses' issues do not rest with Mr. Kuykendall.  He had been retired from DEA for three years or so by the time this 1992 trial occurred.  If there is any reason to doubt the evidence presented against convicted criminals, Mr. Kuykendall encourages truthful reporting about these holes in government proof.  The story should be based upon these holes, not lies told by undisclosed sources about Mr. Kuykendall.

Again, Mr. Kuykendall hereby requests that any false and misleading information about him be retracted, corrected, and clarified, if Mr. Russell chooses to publish it.  We also suggest, again, that the far better and responsible course would be not to publish these falsehoods and misrepresentations of fact in the first place.  We recommend that Mr. Russell and Amazon stand down and demand that you not publish any falsehoods and factual misrepresentations about Mr. Kuykendall. We hope all of you consult Mr. Kuykendall's book and his trial testimony.  Mr. Kuykendall is innocent of wrongdoing.

If any false statements are published, the publishers of same will be guilty of actual malice and Mr. Kuykendall will pursue all avenues available to seek legal recourse against those who defame him.

Respectfully yours,


/s/ *Robert D. O'Conor*


Robert D. O'Conor


Cc: Amazon Legal Department

Attn: David A Zapolsky

440 Terry Ave N

Seattle, WA 98109

███@amazon.com


Cc: Ajay Patel, Associate General Counsel

Amazon Studios

1236 9th Street

Manhattan Beach, CA 90266

███@amazon.com

RDO/acr