**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | |
|---|---|
| **JAMES KUYKENDALL,** | **Civil Action No. 5:20-cv-00219** |
| *Plaintiff,* | |
| **v.** | |
| **AMAZON STUDIOS, LLC, HECTOR BERRELLEZ, JOHN MASSARIA, GOOD PIXEL PRODUCTIONS, TILLER RUSSELL, and THE INTELLECTUAL PROPERTY CORPORATION,** | |
| *Defendants.* | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................2

TABLE OF AUTHORITIES .................................................. **Error! Bookmark not defined.**

INTRODUCTION ......................................................................................................6

NATURE AND STAGE OF THE PROCEEDINGS ...............................................7

STATEMENT OF ISSUES .......................................................................................8

SUMMARY OF THE ARGUMENTS .....................................................................8

FACTUAL BACKGROUND ....................................................................................9

ARGUMENT ............................................................................................................12

I.  PLAINTIFF'S COMPLAINT AGAINST DEFENDANTS SHOULD BE
    DISMISSED BECAUSE THEY ARE NOT SUBJECT TO PERSONAL
    JURISDICTION IN TEXAS. ............................................................................12

    A.  The Personal Jurisdiction Standard.....................................................12

    B.  Plaintiff Cannot Establish General Jurisdiction Because None of the
        Defendants Have Continuous or Systematic Contacts with Texas.....................13

    C.  Plaintiff Cannot Establish Specific Jurisdiction Because Defendants
        Have Not Purposefully Availed Themselves of the Forum. ...............................16

        1.  Plaintiff Cannot Satisfy the *Calder* Test Because Texas Was
            Neither the Subject of, nor the Location of Sources for, the
            Allegedly Defamatory Content.................................................17

        2.  Plaintiff Cannot Satisfy the *Keeton* Test Because Defendants
            Did Not Circulate the Allegedly Defamatory Content in Texas.............19

    D.  The Exercise of Personal Jurisdiction over the Production Defendants
        Would Not Be Fair or Reasonable. ....................................................21

II. IN THE ALTERNATIVE, THIS COURT SHOULD TRANSFER THE CASE
    TO THE CENTRAL DISTRICT OF CALIFORNIA.........................................22

    A.  This Case Might Have Been Brought in the Central District of
        California. ..................................................................................23

    B.  A Balancing of Interests Weighs in Favor of Transferring the Case to
        California. ..................................................................................24

CONCLUSION.........................................................................................................26

CERTIFICATE OF SERVICE ................................................................................28

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                       **Page(s)**

*Alpine View Co. Ltd. v. Atlas Copco AB*,
  205 F.3d 208 (5th Cir. 2000) ..................................................................13, 15

*Arriaga v. Imperial Palace, Inc.*,
  252 F. Supp. 2d 380 (S.D. Tex. 2003) ...........................................................22

*Bearry v. Beech Aircraft Corp.*,
  818 F.2d 370 (5th Cir. 1987) ........................................................................15

*Busch v. Viacom Int'l, Inc.*,
  477 F. Supp. 2d 764 (N.D. Tex. 2007) ...........................................................22

*Butowsky v. Gottlieb*,
  2020 WL 5797713 (E.D. Tex. July 16, 2020) ............................................. *passim*

*Calder v. Jones*,
  465 U.S. 783 (1984)...........................................................................17, 18, 19

*Cent. Freight Lines Inc. v. APA Transp. Corp.*,
  322 F.3d 376 (5th Cir. 2003) ........................................................................15

*Clemens v. McNamee*,
  615 F.3d 374 (5th Cir. 2010) ........................................................................17

*Colo'n v. Akil*,
  449 F. App'x. 511 (7th Cir. 2011) .................................................................20

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)...........................................................................13, 14, 16

*Davidson v. Time Warner, Inc.*,
  1997 WL 405907 (S.D. Tex. Mar. 31, 1997)...............................................20, 21

*Epstein v. Gray Television, Inc.*,
  2007 WL 295632 (W.D. Tex. Jan. 5, 2007) .............................................23, 24, 26

*Eye Laser Care Ctr., LLC v. MDTV Med. News Now, Inc.*,
  2007 WL 2873782 (S.D. Cal. Sept. 28, 2007).................................................26

*Fielding v. Hubert Burda Media, Inc.*,
  415 F.3d 419 (5th Cir. 2005) .................................................12, 17, 19, 22

*Flexible Innovations Ltd. v. Ideamax*,
  2014 WL 5530253 (N.D. Tex. 2014).............................................................12

*Frank v. P N K (Lake Charles) L.L.C.*,
    947 F.3d 331 (5th Cir. 2020) ................................................................14

*Garner v. Wolfinbarger*,
    433 F.2d 117 (5th Cir. 1970) ...............................................................25

*GemCap Lending I, LLC v. Bateman*,
    2017 WL 8183191 (C.D. Cal. July 17, 2017)........................................26

*Goddard v. Nat'l Ass'n of Physician Recruiters, Inc.*,
    2005 WL 50871 (N.D. Tex. Jan. 11, 2005) ...........................................16

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)..............................................................................14

*Johnston v. Multidata Sys. Int'l Corp.*,
    523 F.3d 602 (5th Cir. 2008) ...............................................................13

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984)....................................................................17, 19, 20, 21

*Liaw Su Teng v. Skaarup Shipping Corp.*,
    743 F.2d 1140 (5th Cir. 1984), *overruled on other grounds by In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147 (5th Cir. 1987) ....................................................................................................23

*Palnik v. Westlake Entm't, Inc.*,
    344 F. App'x. 249 (6th Cir. 2009) ........................................................20

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
    253 F.3d 865 (5th Cir. 2001) ...............................................................13

*Piper Aircraft Co. v. Reynolds*,
    454 U.S. 235 (1981)..........................................................................24, 25

*Radio Santa Fe, Inc. v. Sena*,
    687 F.Supp. 284 (E.D. Tex. 1988).........................................................25

*Revell v. Lidov*,
    317 F.3d 467 (5th Cir. 2002) ...................................................... *passim*

*TimeGate Studios, Inc. v. TimeFly Studios, Inc.*,
    2008 WL 11407329 (S.D. Tex. Oct. 9, 2008)....................................23, 25

*Two-Way Media LLC v. AT & T Inc.*,
    636 F. Supp. 2d 527 (S.D. Tex. 2009) ..................................................23

*Weller v. Flynn*,
   312 F. Supp. 3d 706 (N.D. Ill. 2018) ........................................................................20

**Statutes**

28 U.S.C. § 1391 ....................................................................................................................24

28 U.S.C. § 1404 ................................................................................................................6, 23

Defendants Hector Berrellez ("Berrellez"), John Massaria ("Massaria"), Tiller Russell ("Russell"), and IPC Television, LLC (sued herein as "The Intellectual Property Corporation") ("IPC") (collectively "Defendants")[1] respectfully submit this memorandum of law in support of their motion, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, to dismiss Plaintiff James Kuykendall's ("Plaintiff") Complaint on the grounds that this Court lacks personal jurisdiction over Defendants; or, in the alternative, Defendants Berrellez, Russell, and IPC (the "IPC Defendants") move to transfer this case to the Central District of California for the convenience of the parties and witnesses, and in the interest of justice, pursuant to 28 U.S.C. § 1404(a).

## **INTRODUCTION**

Plaintiff brings this lawsuit for claims arising from a documentary television series developed, produced, and filmed primarily in California, and depicting events that occurred in California and Mexico.  None of the Defendants reside or regularly transact business in the State of Texas, nor had significant contact with Texas during the production of the series.  Beyond the fact that Plaintiff currently happens to reside in Laredo, the facts of this case have no connection to Texas at all.

Because the exercise of personal jurisdiction over these Defendants violate well-established Constitutional principles, they now bring this motion to dismiss Plaintiff's Complaint. In the alternative, the IPC Defendants move to transfer venue to the Central District of California pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses, and in the interests of justice.

---

[1] "Good Pixel Productions" is not a legal entity.  It is, rather, a YouTube "channel." Declaration of John Massaria, dated March 5, 2021 ("Massaria Decl."), ¶ 3.

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff filed this diversity action on December 21, 2020.  In his Complaint he alleges claims for defamation, intentional infliction of emotional distress, and violation of his right of publicity arising from his portrayal in the documentary television series "The Last Narc" (the "Series").  Plaintiff concedes that none of the Defendants are residents of Texas.  Compl. ¶¶ 16, 21–26.  In addition, none of the Defendants owns property in Texas, regularly conducts business in Texas, or traveled to Texas in connection with the Series.  Massaria Decl. ¶¶ 8–9; Declaration of Tiller Russell, dated March 7, 2021 ("Russell Decl."), ¶¶ 13, 16; Declaration of Hector Berrellez, dated March 5, 2021 ("Berrellez Decl."), ¶ 11; Declaration of Andy Olymbiou, dated March 3, 2021 ("Olymbiou Decl."), ¶¶ 5, 7.  None of the Defendants is responsible for the distribution or exhibition of the Series in Texas.  Massaria Decl. ¶5; Russell Decl. ¶ 14; Berrellez Decl. ¶ 9; Olymbiou Decl. ¶ 9.

Plaintiff also concedes that the Series concerns events that occurred primarily in Mexico.  *See* Compl. ¶¶ 28, 32–35, 84–90.  All production, editing, and post-production for the Series took place in California.  Russell Decl. ¶ 8.  The majority of the filming for the Series took place in California.  *Id.*  The only additional filming took place in Mexico, Arizona, and New Mexico.  *Id.* No filming, interviews, or other production activity for the Series took place in Texas.  *Id*; Olymbiou Decl. ¶ 7.  No Texas resident was interviewed in connection with the Series.  Russell Decl. ¶ 8; Olymbiou Decl. ¶ 7.

Finally, all of Plaintiff's allegations arise from events that occurred in Mexico and California.  *See, gen.* Compl. ¶¶ 28–112.  Plaintiff does not identify any sources for the Series (except for himself) who reside in Texas.  All relevant documents related to the production of the Series are located in California, as are the majority of witnesses.  Olymbiou Decl. ¶ 8.  Thus, if the Court does not dismiss this lawsuit against the Defendants for lack of personal jurisdiction,

Plaintiff's Complaint against the IPC Defendants should be transferred to the Central District of California.

## STATEMENT OF ISSUES

Whether a Texas court can exercise personal jurisdiction over defendants who do not reside in Texas, when Plaintiff's claims concern events that did not occur in and do not relate to Texas, and do not arise from any contacts by Defendants in Texas?

In the alternative, whether this Court should transfer this case to the Central District of California where it could have been brought, when the Series was developed, produced, and edited in the Central District of California, a majority of participant interviews took place in that District, and most of the witnesses and documents are located in that District?

## SUMMARY OF THE ARGUMENTS

- **No General Jurisdiction.**  Plaintiff has not pleaded, nor could he establish general jurisdiction over the Defendants.  IPC is a Delaware limited liability entity with its principal place of business in Van Nuys, California.  Berrellez, Massaria, and Russell are residents of California, New York, and New Mexico, respectively, and do not have continuous and systematic contacts with Texas.

- **No Specific Jurisdiction.**  Plaintiff has not pleaded and cannot establish specific jurisdiction over Defendants.  The focus of the Series is not about Texas or Plaintiff's activities in Texas.  Nor does Plaintiff identify any witnesses, except himself, located in Texas, and Plaintiff declined to participate in the Series and was not a source for the Series.

- **The Exercise of Jurisdiction Over Defendants Is Unfair.**  Even if the Court had specific jurisdiction, the exercise of jurisdiction over Defendants is unfair and unreasonable given Defendants' lack of contacts with Texas and the complete lack of Texas-related interest in this matter.

- **The Central District of California is an Adequate and Available Forum.**  In the alternative, the Central District of California has subject matter and personal jurisdiction over the IPC Defendants, and a weighing of the public and private interests favor transfer of venue to that forum.

## **FACTUAL BACKGROUND**

### **The Series**

"The Last Narc" is a four-part documentary series about the 1985 kidnapping, torture, and murder of DEA agent Enrique "Kiki" Camarena at the hands of a Mexican drug cartel in Guadalajara, Mexico.  The Series tells the story of Camarena's infiltration of the cartel, his death, and the long quest to bring his killers and those complicit in his murder to justice.  Russell Decl. ¶ 5; *see also The Last Narc*, Amazon Prime, *https://www.amazon.com/The-Last-Narc-Season-1/dp/B08D1QKRVD* (last visited Ma. 5, 2021).  All of the relevant events reported in the Series took place in Mexico or California.  Russell Decl. ¶ 7.

The Series is told principally from the perspective of the lead investigator into Camarena's murder, Defendant Berellez, and also includes interviews with Camarena's widow, former DEA Intelligence Director Phil Jordan, former DEA agent in charge of the Guadalajara office Mike Holm, three cartel informants whose testimony was crucial in securing indictments and convictions in the criminal cases brought against Camarena's killers, and the lead prosecutor in those cases, former AUSA Manny Medrano.  *Id.* ¶ 6.

### **The Parties**

Plaintiff James Kuykendall is a retired DEA agent.  Compl. ¶¶ 5, 27–29.  He was the head of the Guadalajara DEA office when agent Kiki Camarena, whom he supervised, was kidnapped, tortured, and murdered by the Guadalajara cartel in February 1985.  *Id.* ¶¶ 1, 5, 28, 32, 35.  Shortly thereafter, in September 1985, he was removed from that position and transferred to the DEA's Laredo Field Office.  *Id.* ¶ 28.

Defendant Berrellez is a former DEA Supervisor and Special Agent, with nearly thirty years of experience in counter-terrorism and narcotics enforcement.  Berrellez Decl. ¶ 3.  In 1989

he was appointed to lead "Operation Leyenda" by DEA Administrator Jack Lawn, the largest murder investigation in DEA history, to bring Camarena's killers to justice. *Id.* ¶ 4. For his work, he was awarded the U.S. Attorney's Award for Heroism and the Medal of Valor from the Federal Bar Association, as well as the DEA Administrator's Award. *Id.* ¶ 5. Currently, he lives in Riverside, California. *Id.* ¶ 2. He does not own any property in Texas, does not have a bank account or any assets located in Texas, did not travel to Texas in connection with the Series, and has had no contact with Plaintiff for at least 28 years. *Id.* ¶¶ 8, 11.

Defendant Massaria is a producer and editor, who lives in Northport, New York. Massaria Decl. ¶¶ 2–3. He is the creator of the YouTube channel, Good Pixel Productions ("Good Pixel"). *Id.* ¶ 3. Good Pixel is not a legal entity. *Id.* He does not own any property in Texas or have a bank account or any assets located in Texas. *Id.* ¶ 9. He has not entered into any contracts in Texas related to the Series, did not travel to Texas in connection with the Series, and has never had any contact with Plaintiff. *Id.* ¶¶ 6–8.

Defendant Russell is a resident of New Mexico. Russell Decl. ¶ 2. He is a journalist, writer, director, and producer with over twenty years' experience in the media business. *Id.* ¶ 3. Russell spent fourteen years developing and interviewing sources for the Series, and he directed the Series. *Id.* ¶ 4. He does not have a bank account or own any property in Texas, has not entered into any contracts in Texas related to the Series, and did not travel to Texas in connection with the Series. *Id.* ¶¶ 13, 15–16. His only contact with Plaintiff was a single phone call he made to Plaintiff on November 7, 2019, which lasted approximately three minutes, and a letter he wrote to Plaintiff on December 17, 2019, in which he asked Plaintiff to participate in the Series and Plaintiff declined. *Id.* ¶¶ 9–12.

Defendant IPC is a Delaware limited liability company, with its principal place of business in Van Nuys, California.  Olymbiou Decl. ¶ 4.  IPC is an Emmy Award-winning media company that produces and develops television, film, documentary, and interactive mobile content.  *Id.* ¶ 3. It has no assets, real property, bank accounts, offices, or employees located in the State of Texas, is not registered to do business in Texas, and does not regularly conduct business in Texas.  *Id.* ¶ 5.  IPC is not a party to any contract related to the Series that was negotiated, executed, or is to be performed in Texas.  *Id.* ¶ 10.  None of its employees or agents traveled to Texas in connection with the Series, nor did they conduct any interviews in Texas or with anyone from Texas.  *Id.* ¶ 7. IPC produced, but did not distribute or exhibit the Series.  *Id.* ¶¶ 6, 9.

### **Plaintiff's Claims**

Plaintiff brings this lawsuit for defamation, intentional infliction of emotional distress, and violation of his right of publicity arising from allegedly false statements made about him in the Series, which he claims proliferated and were perpetuated on the Internet, including on the Good Pixel YouTube channel.  *See* Compl. ¶¶ 69–90, 98–107.  According to Plaintiff, the "basic premise" of the Series "is that Camarena was killed, not by the [Guadalajara] Cartel, but by agents of the Central Intelligence Agency ('CIA') and other American officials who secretly conspired with the Cartel to traffic drugs into the United States so that the proceeds could be used to fund the Contras then fighting the Communist regime in Nicaragua."  *Id*. ¶ 4.  Camarena was killed "because he had discovered, and was about to expose, this supposed deep-state conspiracy."  *Id.* According to Plaintiff, the Series falsely accuses him of complicity in Camarena's murder.  *Id.* ¶ 5.

Specifically, Plaintiff claims that the Series falsely accuses him of: (1) taking bribes from the Cartel and being involved in the planning and execution of Camarena's kidnapping, and, (2)

giving false testimony at the trial of one of Camarena's murderers.  *Id.* ¶ 6; *see also id.* ¶ 69. Although Plaintiff acknowledges that the Series never identifies by name any American official who took bribes from the Cartel, or was involved in planning and executing Camarena's kidnapping, *id.* ¶¶ 84–85, 98, he claims that after the Series premiered, various third parties speculated on the Internet that Plaintiff was the "'unnamed DEA official' accused of taking cartel bribes," who was responsible for Camarena's kidnapping and murder.  *Id.* ¶¶ 99–101.  Plaintiff also accuses Defendant Massaria of posting defamatory comments about Plaintiff on the Good Pixel YouTube channel, *id.* ¶ 104, and falsely stating that Plaintiff took bribes, lied under oath, and was complicit in Camarena's murder.  *Id.* ¶¶ 104–05.

Although he did not participate in the Series, Plaintiff claims that the Series includes recordings and photographs of him that he did not grant permission to use.  *Id.* ¶108.  He also alleges that Defendant Russell sent him a letter in December 2019, which detailed false allegations against him that "Defendants planned to publish" in the Series.  *Id.* ¶ 59.  On December 24, 2019, Plaintiff responded to Mr. Russell's letter, "denying and refuting each of the allegations and assertions Russell had made about him."  *Id.* ¶ 61, Ex. 2.

## ARGUMENT

## I.   PLAINTIFF'S COMPLAINT AGAINST DEFENDANTS SHOULD BE DISMISSED BECAUSE THEY ARE NOT SUBJECT TO PERSONAL JURISDICTION IN TEXAS.

### A.   The Personal Jurisdiction Standard

When defendants do not reside in Texas, as here, plaintiff bears the burden of establishing that personal jurisdiction over them is proper.  *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005).  In determining whether a court has personal jurisdiction, factual allegations in the complaint should be taken as true, but "the court does not accept as true conclusional allegations."  *Flexible Innovations Ltd. v. Ideamax*, 2014 WL 5530253, *2 (N.D. Tex.

2014) (citing *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).  In addition, in resolving a motion to dismiss for lack of personal jurisdiction, "the district court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (internal quotations omitted).

A federal court may exercise personal jurisdiction over a non-resident defendant to the extent permitted by state law.  *Panda Brandywine*, 253 F.3d at 867.  Under Texas law, the long-arm statute extends jurisdiction to the limits of the Due Process clause of the Fourteenth Amendment.  *Id*; *see also Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) ("[B]ecause the Texas long-arm statute extends to the limits of federal due process, the two-step [personal jurisdiction] inquiry collapses into one federal due process analysis.").

Due process requires a plaintiff to prove: "(1) that defendant has purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state; and (2) that the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'"  *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).  Minimum contacts may be established through contacts sufficient to give rise to either general or specific jurisdiction.  *Panda Brandywine*, 253 F.3d at 867.  Applying this Circuit's well-settled personal jurisdiction analysis, Defendants lack the requisite ties to Texas for this Court to exercise either general or specific jurisdiction.

**B.      Plaintiff Cannot Establish General Jurisdiction Because None of the Defendants Have Continuous or Systematic Contacts with Texas.**

General jurisdiction exists over a non-resident only when the defendant's "affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'"  *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop*

*Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  In *Daimler*, the Supreme Court clarified its previous holding in *Goodyear Dunlop* that this is an exceptionally high threshold:  the general jurisdiction "inquiry . . . is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are *so 'continuous and systematic' as to render it essentially at home in the forum State.*'" *Id.* at 139 (emphasis added) (internal quotations omitted).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id* at 137.  "With respect to a corporation, the place of incorporation and principal place of business are 'paradigm . . . bases for general jurisdiction.'" *Id*.  In the event a court is not located in one of these two paradigmatic places, to exercise general jurisdiction, a plaintiff must establish that this is "the 'exceptional case' where [defendant's] corporate operations are 'so substantial and of such a nature as to render the corporation at home' in [the] forum." *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 337 (5th Cir. 2020); *accord Daimler*, 571 U.S. at 139 n. 19.

No Defendants are "at home" in Texas:  None is incorporated in Texas; none maintains its principal place of business in Texas; and none resides in Texas.  Massaria Decl. ¶ 2; Russell Decl. ¶ 2; Berrellez Decl. ¶ 2; Olymbiou Decl. ¶ 4.  IPC is a Delaware corporation with its principal place of business in Van Nuys California.  Compl. ¶, 26; Olymbiou Decl. ¶ 4.  Massaria is a New York resident.  Compl.  ¶ 23; Massaria Decl. ¶ 2.  Russell is a New Mexico resident.  Compl. ¶ 25; Russell Decl. ¶ 2.  None of the Defendants own property in Texas, have assets in Texas, or conduct any regular business in Texas.  *See* Massaria Decl. ¶¶ 7–9; Russell Decl. ¶¶ 13, 16; Berrellez Decl. ¶¶ 10–11; Olymbiou Decl. ¶¶ 5 & 10.  Thus, absent exceptional circumstances, none of the Defendants is subject to general personal jurisdiction in Texas.  *See Frank*, 947 F.3d at 337.

Such exceptional circumstances are not present here.  Plaintiff's principal argument for the exercise of personal jurisdiction over Defendants is that they "produced, published, and distributed" the alleged defamatory content, which was "directed at Plaintiff Kuykendall," a Texas resident.  Compl. ¶ 18.  Plaintiff also alleges (falsely) that Defendants "interviewed various sources in Texas in the development of the Show (including Plaintiff Kuykendall)," that they "benefit from distribution of the content nationwide, including in Texas," and knew that Plaintiff resided in Texas.  *Id.*  Contrary to Plaintiff's contention, however, Defendants did not conduct any interviews in Texas or with anyone in Texas in connection with the Series.[2]  Olymbiou Decl. ¶ 7; Russell Decl. ¶ 8.  Moreover, even if they had, these alleged sporadic and limited contacts with Texas are insufficient to establish the extensive contacts necessary for general jurisdiction.  *See, e.g., Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (no general jurisdiction even though the defendant routinely arranged and received interline shipments to and from Texas and regularly sent sales people to Texas to develop business, negotiate contracts, and service national accounts); *Alpine View Co.*, 205 F.3d at 218 (no general jurisdiction existed over defendant where evidence showed it "sold, on isolated occasions, products to entities located in Texas, that it was party to an agreement to provide Mexican mines with products that were shipped to Texas before being shipped to Mexico, that companies used [defendant's] products for projects in Texas, and that [defendant's] personnel made field service visits to Texas"); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 373–76 (5th Cir. 1987) (holding that the sale of over $250 million of products to seventeen Texas customers over a five year period did not constitute systematic and continuous contacts with Texas because delivery was accepted in Kansas).  These tenuous

---

[2] Mr. Russell's brief phone call and letter to Plaintiff, and Plaintiff's two-hundred-word response, cannot reasonably be construed as an "interview," particularly since Plaintiff provided no factual information but merely accused Mr. Russell of lying.  *See* Compl. Ex. 2.

connections fail to establish that any Defendants are "essentially at home" in Texas. *Daimler*, 571 U.S. at 127.

In addition, the Complaint is devoid of any allegation concerning Defendants' conduct in the forum *unrelated* to the Series, which is essential for the exercise of general jurisdiction. *See, e.g., Revell*, 317 F.3d at 470 ("General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'"); *Goddard v. Nat'l Ass'n of Physician Recruiters, Inc.*, 2005 WL 50871, at *3 (N.D. Tex. Jan. 11, 2005) ("[T]he general jurisdictional inquiry focuses exclusively on whether the nonresident defendant's contacts with the forum unrelated to the cause of action are sufficiently 'continuous and systemic' to satisfy due process requirements.") (internal citations omitted).

Taken together, Plaintiff's allegations do not establish that any of the Defendants are properly considered "at home" in Texas.  Nor do they establish that this is in any way an "exceptional" case where Defendants' contacts with the forum state are "so substantial and of such a nature as to render" them subject to general personal jurisdiction where they are not "at home." *See Daimler*, 571 U.S. at 139 n.19.  For these reasons, the Court should decline to exercise general jurisdiction over Defendants.

C.    **Plaintiff Cannot Establish Specific Jurisdiction Because Defendants Have Not Purposefully Availed Themselves of the Forum.**

Plaintiff also cannot establish specific jurisdiction over Defendants because none of them has the requisite minimum contacts with Texas.  Specific jurisdiction exists when a non-resident defendant purposefully directs his activities at the forum state, and those activities give rise to, or are directly related to, plaintiff's cause of action. *Revell*, 317 F.3d at 470 (citation omitted).  "The non-resident's purposefully directed activities in the forum must be such that he could reasonably

anticipate being haled in court in the forum state." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010).

In a defamation case, as here, there are two tests for determining whether specific jurisdiction over a nonresident defendant is proper under Texas law.  An exercise of specific jurisdiction is proper where either: (1) the publisher "aims" the story at the state knowing the effects of the story will be felt there; or (2) the publication has adequate circulation in the state. *See Fielding*, 415 F. 3d at 425 (citing *Calder v. Jones*, 465 U.S. 783, 789-90 (1984) and *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773–74 (1984)).

Applying either the *Calder* or *Keeton* tests, Plaintiff cannot establish that Defendants have the requisite minimum contacts with Texas sufficient to establish specific jurisdiction.

### 1. Plaintiff Cannot Satisfy the *Calder* Test Because Texas Was Neither the Subject of, nor the Location of Sources for, the Allegedly Defamatory Content.

Under the *Calder* test, when a defendant's only contact with the forum state is a publication, plaintiff must show both that (1) the subject matter of the publication, and (2) the sources relied upon for the publication were in the forum state.  *Clemens*, 615 F.3d at 380; *Butowsky v. Gottlieb*, 2020 WL 5797713, *5 (E.D. Tex. July 16, 2020).  The "subject" prong of this test requires that the plaintiff's activities in the forum state, or the forum state itself, be a "focus" of the publication at issue.  *Clemens*, 615 F.3d at 379–380.  As the Fifth Circuit explained in *Revell*, in finding that the court lacked personal jurisdiction over a non-resident defendant who accused plaintiff on a Columbia University website of having advance knowledge of the bombing of Pan Am Flight 103:

> [T]he article written by [plaintiff] about [defendant]contains no reference to Texas, nor does it refer to the Texas activities of [plaintiff], and it was not directed at Texas readers as distinguished from readers in other states. Texas was not the focal point of the article or the harm suffered, unlike *Calder*, in which the article contained

descriptions of the California activities of the plaintiff, drew upon California sources, and found its largest audience in California.

317 F.3d 467, 473. Under the "sources" prong, the publication must rely on sources within the forum state that provide "new and substantial disclosures" or are "more than marginally important," to the publication's focus. *Butowsky,* 2020 WL 5797713 at *5 (citing *Fielding*, 415 F. 3d at 426).

First, examining the subject prong here, it is clear the focus of the Series (and any Internet postings about it) is neither Plaintiff's activities in Texas, nor the State of Texas itself. Rather, as Plaintiff acknowledges, the Series is based primarily on events that occurred in Mexico. *See* Compl. ¶¶ 28, 32–35, 84–90. To the extent the Series references Plaintiff, it relates to his activities as a DEA agent in Mexico from 1982 to 1985, as well as his testimony at trial in California. *Id*. ¶¶ 59, 69. The Series does not reference any of Plaintiff's activities in Texas, and indeed makes no reference to Texas at all. Thus, Plaintiff's allegations fail to satisfy the subject prong of the *Calder* analysis. *See Butowsky*, 2020 WL 5797713 at *9 ("Since Texas was not mentioned in any of CNN Individual Defendants' publications in connection to [plaintiff's allegations of] a 'concoction' of a 'conspiracy theory,' CNN Individual Defendants did not make Texas the focus of the publications sufficient to satisfy the subject prong of a *Calder* analysis.").

Second, Plaintiff's allegations also do not satisfy the "sources" prong of the *Calder* test. Although Plaintiff alleges that Defendants "interviewed various sources in Texas," Compl. ¶ 18, this is false. *See* Olymbiou Decl. ¶ 7; Russell Decl. ¶ 8. Moreover, the Complaint does not allege that any of the Defendants other than Russell had any contact with Plaintiff, and even that contact was a single phone call and letter, which resulted in Plaintiff simply declining to participate in the Series. Thus, Plaintiff fails to allege *any* facts – let alone sufficient facts – to satisfy the sources prong of the *Calder* test for Defendants Berrellez, Massaria, and IPC. *See Butowsky*, 2020 WL

5797713, at *11 (absent any allegation that specific defendants relied upon or consulted any Texas source, Plaintiff could not meet the "source" prong of the *Calder* test).

As to Defendant Russell, Plaintiff claims that Russell sent him a letter on December 17, 2019, setting forth allegedly false allegations that Defendants intended to publish, and that "Defendants chose to ignore" Plaintiff's denials and publish them in the Series.  Compl. ¶ 68. Under Texas law, this is insufficient to meet the "source" prong because it does not allege that any information from a Texas source was *actually relied upon* in the publication.  *See Fielding*, 415 F.3d at 426 (in determining whether a Texas court could exercise jurisdiction in a lawsuit concerning defamatory articles published by two German magazines about a Texas resident who had lived in Berlin, court must consider whether "the sources relied upon for the article were in the forum state."); *Butowsky,* 2020 WL 5797713 at *10 (source prong not satisfied where only allegations related to a Texas source were plaintiff's own statements that were collateral to the subject of the article).

Because Texas was neither the subject matter nor the location of sources for the Series, the Complaint cannot meet the *Calder* Test for exercising personal jurisdiction.

## 2. Plaintiff Cannot Satisfy the *Keeton* Test Because Defendants Did Not Circulate the Allegedly Defamatory Content in Texas.

Under the *Keeton* Test, courts may also exercise specific jurisdiction over a non-resident defendant in a defamation suit where the allegedly defamatory publication at issue has "adequate circulation within the forum state."  *Butowsky,* 2020 WL 5797713 at *12 (citing *Keeton*, 465 U.S. at 781).  The Supreme Court has made clear that the circulation analysis must be made individually as to each defendant, and that a finding of jurisdiction over a corporate defendant does not convey jurisdiction over individual employees or agents.  *Keeton*, 465 U.S. at 781 n.13 (noting that "[e]ach defendant's contacts with the forum State must be assessed individually" and a finding of

jurisdiction over the defendant magazine did not lead to an automatic finding of jurisdiction over the individual defendant who was the magazine's publisher, editor, and owner); *see also Butowsky*, 2020 WL 5797713 at \*12 (declining to find jurisdiction over Anderson Cooper as a producer of *Anderson Cooper 360* under the *Keeton* Test).

Thus, when personal jurisdiction is based on an allegedly defamatory publication within the forum, courts have routinely held that a non-resident defendant is not subject to personal jurisdiction where it did not play a role in the distribution of the publication.  *See e.g. Davidson v. Time Warner, Inc.*, 1997 WL 405907, at \*8 (S.D. Tex. Mar. 31, 1997) (no personal jurisdiction over defendant Tupac Shakur in lawsuit based on his recording *2Pacalypse Now* where Shakur had no control over how the recording would be distributed); *Colo'n v. Akil*, 449 F. App'x. 511, 514 (7th Cir. 2011) (non-resident producers of a television program were not subject to personal jurisdiction in Indiana because they played no role in broadcasting the show in that state); *Palnik v. Westlake Entm't, Inc.*, 344 F. App'x. 249, 252–54 (6th Cir. 2009) (no personal jurisdiction over non-resident producers who played no role in the movie's distribution in the forum state); *Weller v. Flynn*, 312 F. Supp. 3d 706, 717–18 (N.D. Ill. 2018) (non-resident producers were not subject to personal jurisdiction in Illinois because Twentieth Century Fox's efforts in distributing the film at issue could not be imputed to them).

Here, Plaintiff does not allege that any of the Defendants played a role in the exhibition or distribution of the Series, and they did not.  Defendants Berellez, Massaria, and Russell are individuals who participated in and/or were associated with the Series.  Massaria Decl. ¶ 4; Russell Decl. ¶ 4; Berrellez Decl. ¶ 6.  Defendant IPC is a production company.  Olymbiou Decl. ¶ 3. None of these Defendants distributed or exhibited the Series.  Massaria Decl. ¶ 5; Russell Decl. ¶ 14; Berrellez Decl. ¶ 9; Olymbiou Decl. ¶ 9.  Moreover, even if they had, it would not be sufficient

to establish specific jurisdiction because a Plaintiff must demonstrate circulation within the forum state specifically.  *See Butowsky*, 2020 WL 5797713 at *12 (jurisdiction was not proper under the circulation test where plaintiff merely alleged that defendant had a "vested financial interest" in expanding a news program to "all fifty states, including Texas").

That a defendant may benefit from distribution within a certain area is irrelevant and insufficient.  *See Revell*, 317 F.3d at 475 ("[M]ore than simply making the news article accessible to [residents of the forum state] by defendants' posting of the article on their internet sites was needed for assertion of jurisdiction: 'The [defendants] must, through the Internet postings, manifest an intent to target and focus on [forum state] readers.'") (quoting *Young v. New Haven Advocate*, 315 F.3d 256, 262 (4th Cir. 2002)); *Davidson*, 1997 WL 405907 at *8 ("Although Shakur may have hoped that Interscope would distribute *2Pacalypse Now* in Texas, this fervent desire does not make him amenable to personal jurisdiction in Texas.").

Because Defendants had no involvement in the Series' circulation, under the *Keeton* Test this Court lacks personal jurisdiction over them.

### D.    The Exercise of Personal Jurisdiction over the Production Defendants Would Not Be Fair or Reasonable.

Because Defendants do not have minimum contacts with Texas, the Court need not reach the question of whether jurisdiction over them would be fair and reasonable.  *See Butowsky*, 2020 WL 5797713 at *3 ("[I]f minimum contacts are found, the Court will consider whether the exercise of jurisdiction over Defendants satisfies fair play and substantial justice.").  Nevertheless, based on Defendants' lack of any significant contacts with Texas, jurisdiction over them would offend traditional notions of fair play and substantial justice.

The fair play and substantial justice factors include: "(1) the defendant's burden; (2) the judicial state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial

21

system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies." *Busch v. Viacom Int'l, Inc.*, 477 F. Supp. 2d 764, 771 (N.D. Tex. 2007). Here, where Defendants are not resident in Texas, did not film the Series in Texas, and the Series has nothing to do with Texas, there can be no meaningful argument that Texas has a significant interest in adjudicating this action.  And the burden on Defendants to litigate in Texas would be significant.  The only real relation to Texas in this action is that the Plaintiff is a Texas resident. But compelling Defendants to litigate in this forum based on Plaintiff's residence, alone, is neither fair, nor reasonable.  *See Fielding*, 415 F.3d at 427 ("focusing attention not on where the alleged tortfeasor directed its activity, but on where the victim could identify tangential harms" . . . "contravenes 'traditional notions of fair play'");  *Arriaga v. Imperial Palace, Inc.*, 252 F. Supp. 2d 380, 387 (S.D. Tex. 2003) (subjecting Nevada hotel to suit in Texas would "not conform with notions of fair play and substantial justice" where hotel's only contact with Texas was its website, through which Texas residents could book reservations); *Busch*, 477 F. Supp. 2d at 773, n. 5 (asserting jurisdiction over television host Jon Stewart based on content of national program *The Daily Show* would "violate traditional notions of fair play and substantial justice" where Stewart was "a New York citizen with no meaningful contacts with Texas," did not "aim any conduct at Texas," and "Texas was in no way the focal point or target of the challenged broadcast").

## II.      IN THE ALTERNATIVE, THIS COURT SHOULD TRANSFER THE CASE TO THE CENTRAL DISTRICT OF CALIFORNIA.

If the Court declines to dismiss this case against Defendants, it should transfer the claims against the IPC Defendants to the Central District of California "[f]or the convenience of parties

and witnesses, [and] in the interest of justice."[3]  28 U.S.C. § 1404(a).  "In the Fifth Circuit, district

courts have broad discretion in deciding whether to order a transfer."  *Two-Way Media LLC v. AT*

*& T Inc.*, 636 F. Supp. 2d 527, 531 (S.D. Tex. 2009) (citing *In re Volkswagen of America, Inc.*,

545 F.3d 304, 315 (5th Cir. 2008))

In assessing whether to transfer, courts employ a two-prong inquiry.  *TimeGate Studios,*

*Inc. v. TimeFly Studios, Inc.*, 2008 WL 11407329, at *6 (S.D. Tex. Oct. 9, 2008).  First, a court

must determine whether the case "might have been brought" in the transferee forum.  *See* 28 U.S.C.

§ 1404(a); *TimeGate*, 2008 WL 11407329, at *6; *Epstein v. Gray Television, Inc.*, 2007 WL

295632, at *3 (W.D. Tex. Jan. 5, 2007).  Second, the court must perform a balancing of private

and public interests in weighing the merits of transfer.  *TimeGate*, 2008 WL 11407329, at *6.

Here, both prongs support a transfer to the Central District of California.

A.    **This Case Might Have Been Brought in the Central District of California.**

This case might have been brought in the Central District of California because that District

has subject matter and personal jurisdiction over the IPC Defendants, and venue is proper there.

*See Epstein*, 2007 WL 295632 at *3 ("A federal district court is a forum in which suit "might have

been brought" if both jurisdictional and venue requirements are satisfied.").  A federal court sitting

in the Central District of California would have subject matter jurisdiction based on diversity of

---

[3] Although Defendant Massaria is not subject to jurisdiction in California, it may sever the
claims against him and transfer the case against the IPC Defendants to California.  *See Liaw Su*
*Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1148 (5th Cir. 1984), *overruled on other grounds*
*by In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147 (5th Cir. 1987)
("Ordinarily transfer of a suit against multiple defendants is proper only if all of them would have
been amenable to process in, and if venue as to all of them would have been proper in, the
transferee court.  If, however, suit might have been brought against one or more defendants in the
court to which transfer is sought, the claims against those defendants may be severed and
transferred while the claims against the remaining defendant, for whom transfer would not be
proper, are retained in the original court.").

citizenship, the same basis alleged by Plaintiff in this District.  Comp. ¶ 16.  In addition, Defendants Berellez and IPC are residents of California, *see* Berrellez Decl. ¶ 2; Olymbiou Decl. ¶ 4, and Defendant Russell consents to jurisdiction in California.  Russell Decl. ¶ 17.

Venue is proper in the Central District of California because that is where "a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  The Series was developed, produced, and edited in the Central District of California.  Russell Decl., ¶ 8.  A majority of participant interviews, including on camera interviews with Berrellez and the three cartel informants, took place in Los Angeles.  Russell Decl. ¶ 6.  In addition, the trial of Cartel members accused of Camarena's murder, at which the Plaintiff testified, took place in Los Angeles.  Compl. ¶¶ 46, 49.  Moreover, the Series was primarily created, filmed, and produced in California, and a majority of interviews with participants in the Series were conducted there.  Russell Decl. ¶ 8; Olymbiou Decl. ¶ 8.  Therefore, this case could have been brought in the District of California.  *See Epstein*, 2007 WL 295632 at *4 (venue was proper in transferee district where "the broadcast was prepared there, the activities discussed in the broadcast occurred there, interviewees resided there, and the report was actually aired there").

### B.   A Balancing of Interests Weighs in Favor of Transferring the Case to California.

Because the majority of the parties, evidence, and witnesses are located in California, a balancing of public and private interests favor transfer to California.  *See Piper Aircraft Co. v. Reynolds*, 454 U.S. 235, 241 (1981) (recognizing that the court should balance a list of private and public interest factors to determine if transfer is appropriate).  The private interests include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  The public interests include:

(1) the administrative difficulties flowing from court congestion;[4] (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.  *Id.* at n.6.

Virtually all the private and public interests lean toward transfer to California. Transfer to California is appropriate here because the operative facts giving rise to the Plaintiff's claims occurred in California and Mexico, the IPC Defendants are based in or do business in California, California is more convenient for production of key records and witnesses, and the case focuses on production of the Series, which took place primarily in California.  Russell Decl. ¶¶ 2, 5–8; Berrellez Decl. ¶ 2; Olymbiou Decl. ¶¶ 4, 8.  In addition, as discussed above, Texas does not have any significant interest in adjudicating this case.

While the Plaintiff's choice of forum "is a factor" in the balancing of interests, the Fifth Circuit has held that this "factor is not controlling."  *Garner v. Wolfinbarger*, 433 F.2d 117, 119 (5th Cir. 1970); *see also Radio Santa Fe, Inc. v. Sena*, 687 F.Supp. 284, 287 (E.D. Tex. 1988) ("Because a § 1404 transfer is a less drastic procedural measure than dismissal under the doctrine *of forum non conveniens,* the plaintiff's choice of venue may be disregarded for less impelling reasons when considering a defendant's motion to transfer. Accordingly, such a motion more freely may be granted.") (internal quotations omitted).  Indeed, as here, a plaintiff's choice of forum is afforded less deference when the events relevant to his claims occurred elsewhere. *See TimeGate*,

---

[4] According to the U.S. District Courts Federal Court Management Caseload Statistics, there is no appreciable difference between the caseload in the Southern District of Texas and the Central District of California. *See* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0930.2020.pdf (Comparison of Districts - 12-Month Period Ending September 30, 2020) (last visited March 8, 2021).

2008 WL 11407329 at *7 (stating that Texas corporation's choice to bring lawsuit in district where it was based would be afforded less deference due to the absence of activity in that district pertaining to the claims in the case); *Epstein*, 2007 WL 295632 at *4–6 (transferring case despite plaintiff's choice of forum where Texas was inconvenient venue for defendants and a majority of key witnesses, South Carolina was more convenient for most non-party witnesses, allegedly defamatory publication originated in South Carolina, most of the relevant records were maintained in South Carolina, and transfer to South Carolina would not cause unfair delay and prejudice to plaintiff); *GemCap Lending I, LLC v. Bateman*, 2017 WL 8183191, at *6 (C.D. Cal. July 17, 2017) (transferring case where, although plaintiffs resided in California, operative facts giving rise to plaintiffs' allegations in defamation case occurred in Hawaii); *Eye Laser Care Ctr., LLC v. MDTV Med. News Now, Inc.*, 2007 WL 2873782, at *1 (S.D. Cal. Sept. 28, 2007) (transferring case where most of the operative facts occurred of the forum, only one party a few witnesses resided in the forum, and "[t]he underlying controversy revolves around Defendants' production of television programming which took place primarily, if not entirely, in New Jersey").

Thus, because nearly all the public and private factors weigh in favor of transfer, the Court should transfer this case to the Central District of California.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff James Kuykendall's Complaint against them for lack of personal jurisdiction, or in the alternative, transfer this case to the Central District of California.

DATED: March 8, 2021

Respectfully submitted,

LAW OFFICES OF CAMERON STRACHER

By: */s/ Cameron Stracher*
Cameron Stracher, *Pro Hac Vice* pending
NY SBN:  2171080
51 Astor Place, 9th Floor
New York, NY 10003
(646) 992-3850
(646) 992-4241 (fax)
cam@stracherlaw.com

*Attorneys for Tiller Russell, Hector G.*
*Berrellez, and John Massaria*

GILBERTO HINOJOSA AND ASSOCIATES

By: */s/ Gilberto Hinojosa*
Gilberto Hinojosa
SBN:  09701100
622 E. St. Charles
Brownsville, TX 78502
(956) 544-4128
ghinojosa@ghinojosalaw.net

*Attorneys for IPC Television, LLC, Amazon*
*Studios, LLC, Tiller Russell, and Hector G.*
*Berrellez*

HAYNES AND BOONE, LLP

By: */s/ Laura Lee Prather*
Laura Lee Prather
SBN: 16234200
SDN: 15442
Wesley D. Lewis
SBN: 24106204
SDN: 3251642
600 Congress Avenue, Suite 1300
Austin, TX 78701
(512) 867-8476
(512) 867-8609 (fax)
Laura.Prather@haynesboone.com
Wesley.Lewis@haynesboone.com

*Attorneys for IPC Television, LLC*

27

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of March, 2021, a copy of the foregoing has been served upon counsel for all parties to this proceeding through the court's electronic filing system.

Farzin Franklin Amanat
Bruce D. Bernstein
Greg G. Gutzler
Megan E. McKenzie
Dicello Levitt Gutzler LLC
444 Madison Ave., 4th Floor
New York, NY 10022

Alex J. Brown
The Lanier Law Firm, PC
10940 W. Sam Houston Pkwy N
Suite 100
Houston, TX 77064

*/s/ Laura Lee Prather*
Laura Lee Prather

28

# DECLARATION OF
# JOHN MASSARIA

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | |
|---|---|
| **JAMES KUYKENDALL,** | **C.A. NO. 5:20-cv-00219** |
| *Plaintiff,* | |
| **v.** | |
| **AMAZON STUDIOS, LLC, HECTOR BERRELLEZ, JOHN MASSARIA, GOOD PIXEL PRODUCTIONS, TILLER RUSSELL, and THE INTELLECTUAL PROPERTY CORPORATION,** | **DECLARATION OF JOHN MASSARIA** |
| *Defendants.* | |

Pursuant to 28 U.S.C. § 1746, John Massaria declares:

1.      I am over the age of 18 and fully competent to make this declaration.  I have personal knowledge of the facts herein.

2.      I am a resident of the State of New York and have resided in Northport, New York since 2012.

3.      I am a producer and editor, and the creator of the YouTube channel Good Pixel Productions ("Good Pixel"). Good Pixel is the name of a YouTube channel and is not a legal entity.

4.      I was involved in providing archival (taped) material and graphics for use in a "sizzle reel" in connection with the development of the documentary series *The Last Narc* (the "Series").

5.      I played no role in the distribution or exhibition of the Series.

1

6.     I have never had any contact with James Kuykendall.

7.     I am not a party to any contract related to the Series that was negotiated, executed, or is to be performed in Texas.

8.     I did not conduct any activities in Texas or with any Texas resident in connection with the Series.

9.     I do not own any property, bank accounts, or other assets in the State of Texas.


I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 5th ___, 2021.

John Massaria

Scanned with CamSca

# DECLARATION OF
# TILLER RUSSELL

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| JAMES KUYKENDALL, | C.A. NO. 5:20-cv-00219 |
| *Plaintiff,* | |
| v. | |
| AMAZON STUDIOS, LLC, HECTOR BERRELLEZ, JOHN MASSARIA, TILLER RUSSELL, and THE INTELLECTUAL PROPERTY CORPORATION, | DECLARATION OF TILLER RUSSELL |
| *Defendants.* | |

Pursuant to 28 U.S.C. § 1746, Tiller Russell declares:

*1.*      I am over the age of 18 and fully competent to make this declaration.  I have personal knowledge of the facts herein.

*2.*      I am a resident of the State of New Mexico and have resided in New Mexico since 2018.  Prior to that I lived in Los Angeles for more than twenty years, where I still work regularly.

*3.*      I am a journalist, writer, director, and producer with twenty years of experience in the media business.  I began my career as a newspaper crime reporter, and have directed the documentaries, *Night Stalker: The Hunt for a Serial Killer*, about the investigation of Richard Ramirez, *Operation Odessa,*

1

about the Russian mob, and *The Seven Five,* about a corrupt New York police precinct, among other films.

*4.* I was the Director and Executive Producer for the television documentary series *The Last Narc* (the "Series"), and I spent fourteen years developing and interviewing sources for the Series prior to its release.

*5.* The Series is a four-part documentary about the 1985 kidnapping, torture, and murder of U.S. Drug Enforcement Agency ("DEA") agent Enrique "Kiki" Camarena at the hands of a Mexican drug cartel in Guadalajara, Mexico. The Series tells the story of Camarena's investigation of the cartel, his death, and the long quest to bring his killers and those complicit in his murder to justice.

*6.* The Series is told principally from the perspective of the lead investigator into Camarena's murder, retired DEA agent Hector Berrellez. The Series also includes interviews with Camarena's widow, former DEA Intelligence Director Phil Jordan, former Agent in Charge of the Guadalajara office Mike Holm, three cartel informants whose testimony was crucial in securing indictments and convictions in the criminal cases brought against Camarena's killers, and the lead prosecutor in those cases, former AUSA Manny Medrano. All of these interviews were conducted in Los Angeles, California.

*7.* All relevant events reported in the Series took place in Mexico or California.

*8.* All pre-production, editing, and post-production for the Series took place in California. The majority of the filming for the Series took place in California.

2

The only additional filming took place in Mexico, Arizona, and New Mexico.  No filming, interviews, or other production activity for the Series took place in Texas.  No Texas resident was interviewed in connection with the Series.

9.      On November 7, 2019, I spoke on the telephone with retired DEA agent James Kuykendall.  During the call, I informed Mr. Kuykendall that individuals interviewed for the Series had made a number of allegations of criminal conduct against him related to his time as Resident Agent in Charge of the Guadalajara DEA Field Office, specifically in relation to the kidnapping and murder of Camarena, and asked for his response.  Mr. Kuykendall declined to answer my questions, and the call ended after approximately three minutes.  He hung up on me.

10.     On December 17, 2019, I sent a letter to Mr. Kuykendall that outlined the allegations against him as referenced during my call on November 7.  As I stated in my letter, my purpose in contacting Mr. Kuykendall was to provide him with an opportunity to respond to the allegations.  None of the allegations related to Texas or to any conduct by Mr. Kuykendall in the State of Texas.

11.     On December 24, 2019, I received a letter response from Mr. Kuykendall.  In his response, Mr. Kuykendall stated that everything in my December 17 letter was a lie, but he did not identify any facts or provide any specific information to rebut the allegations.

12.     I had no further communication with Mr. Kuykendall after receiving the December 24 letter.

3

13.     Aside from my interaction with Mr. Kuykendall identified in paragraphs 9 through 11 above, I did not conduct any activities in Texas or contact any resident of Texas in connection with the Series.  I did not travel to Texas in connection with the Series.

14.     I did not play any role in the distribution or exhibition of the Series.

15.     I am not a party to any contract related to the Series that was negotiated, executed, or is to be performed in Texas.

16.     I do not have a bank account or own any property in the State of Texas.

17.     In the event the above-captioned matter is transferred to a federal court sitting in the Central District of California, I hereby consent to the jurisdiction of that court for the purposes of this matter.


I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March ___7___, 2021.


_____

Tiller Russell

# DECLARATION OF HECTOR BERRELLEZ

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

| | |
|---|---|
| **JAMES KUYKENDALL,** | **C.A. NO. 5:20-cv-00219** |
| *Plaintiff,* | |
| **v.** | |
| **AMAZON STUDIOS, LLC, HECTOR BERRELLEZ, JOHN MASSARIA, GOOD PIXEL PRODUCTIONS, TILLER RUSSELL, and THE INTELLECTUAL PROPERTY CORPORATION,** | **DECLARATION OF HECTOR BERRELLEZ** |
| *Defendants.* | |

Pursuant to 28 U.S.C. § 1746, Hector Berrellez declares:

1.      I am over the age of 18 and fully competent to make this declaration.  I have personal knowledge of the facts herein.

2.      I am a resident of the State of California and have resided in Riverside, California since 1996.

3.      I am a former Supervisor and Special Agent with the U.S. Drug Enforcement Agency ("DEA") with twenty-six years of experience in counter-terrorism and narcotics enforcement.

4.      In 1989, I was appointed to lead "Operation Leyenda" by the DEA Administrator Jack Lawn.  The purpose of Operation Leyenda was to investigate the kidnapping and murder of DEA agent Enrique "Kiki" Camarena and bring those responsible to justice. It became the largest murder investigation in DEA history.

5.   I was awarded the U.S. Attorney's Award for Heroism, the Medal of

Valor from the Federal Bar Association, and the DEA Administrator's Award for my

work on Operation Leyenda.

6.   I participated in the development of the four-part documentary series *The

Last Narc* (the "Series"). My participation was limited to providing an interview and

information about the murder of Camarena based on my first-hand involvement in

Operation Leyenda.

7.   During my interview for the Series, I was not asked about, and did not

discuss, any activities that occurred in Texas.

8.   I have had no contact with James Kuykendall since around 1993.

9.   I am neither the creator nor a producer of the Series, and I played no role

in the distribution or exhibition of the Series.

10.   I am not a party to any contract related to the Series that was negotiated,

executed, or is to be performed in Texas.

11.   I do not own any property, bank accounts, or other assets in the State of

Texas. I do not regularly transact business in or with any resident of Texas, and did not

travel to Texas in connection with the Series.

I hereby declare under penalty of perjury under the laws of the United States of

America that the foregoing is true and correct.

Executed on March 5 , 2021.

Hector Berrellez

2

# DECLARATION OF ANDY OLYMBIOU

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

| | |
|---|---|
| **JAMES KUYKENDALL,** | **C.A. NO. 5:20-cv-00219** |
| *Plaintiff,* | |
| **v.** | |
| **AMAZON STUDIOS, LLC, HECTOR BERRELLEZ, JOHN MASSARIA, GOOD PIXEL PRODUCTIONS, TILLER RUSSELL, and THE INTELLECTUAL PROPERTY CORPORATION,** | **DECLARATION OF ANDY OLYMBIOU** |
| *Defendants.* | |

Pursuant to 28 U.S.C. § 1746, Andy Olymbiou declares:

1.       I am over the age of 18 and fully competent to make this declaration.  I have personal knowledge of the facts herein.

2.       I am the Vice President and Head of Finance at IPC Television, LLC ("IPC").

3.       IPC is an Emmy-award winning media company that produces and develops television, film, documentary, and interactive mobile media content.

4.       IPC is a Delaware limited liability company with its principal place of business in Van Nuys, California.

5.       IPC has no assets, real property, bank accounts, offices, or employees located in the State of Texas, is not registered to do business in Texas, and does not regularly conduct business in that State.

1

6.      IPC produced the four-part documentary series *The Last Narc* (the "Series").

7.      IPC did not conduct any activity in Texas in connection with the production of the Series. None of IPC's employees or agents traveled to Texas in connection with the Series. No IPC employee or agent conducted an interview in connection with the Series in Texas or with a Texas resident.

8.      All relevant records in IPC's possession, custody, or control related to the Series are located in California.  All employees or agents of IPC with knowledge of the Series are located in California.

9.      IPC did not play any role in the distribution or exhibition of the Series.

10.     IPC is not a party to any contract related to the Series that was negotiated, executed, or is to be performed in Texas.


I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March **3ʳᵈ**, 2021


_____
Andy Olymbiou