UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| **JAMES KUYKENDALL,**<br><br>    *Plaintiff*,<br><br>**vs.**<br><br>**AMAZON STUDIOS, LLC,** *et al.*,<br><br>    *Defendants*. | CIVIL ACTION No. 5:20-cv-219<br><br>Hon. Maria Garcia Marmolejo, D.J.<br>Hon. John A. Kazen, M.J. |

### NOTICE OF CORRECTION
### TO PLAINTIFF'S MEMORANDUM IN OPPOSITION
### TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

The last paragraph on page 12 of Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 53, filed April 8, 2021) contains the following passage:

> On May 4, Kuykendall's counsel expanded this roadmap to the truth in yet another letter to Stracher, again sent from Texas, identifying eight specific individuals, most of them current and former DEA agents and officials, who had information that would confute the accusations against Kuykendall. *Id*. ¶ 64 & Exh. 6. Plaintiff's counsel followed up with an email to Stracher the next day, again sent from Texas, that provided email contact information for each of these eight people. *Id*. At least two of these sources, Mike Chavarria and Pedro Hernandez (a former DEA agent who worked with Camarena and Kuykendall in Guadalajara at the time of Camarena's death), live in Texas. See Kuykendall Decl. ¶¶ 3-4. *Defendants made no attempt to contact or interview any of these individuals or to review any of the evidence to which Kuykendall directed them before the Show was released on July 31, 2020.* Compl. ¶ 67.

ECF No. 53, at 12-13 (italics added).

In the course of preparing Plaintiff's initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1), which were served on April 28, 2021, Plaintiff ascertained that the italicized

Correction to Plaintiff's Opposition to Motion to Dismiss
*Kuykendall v. Amazon Studios LLC, et al.*, No. 5:20-cv-219 (S.D. Tex.)
Page 1

sentence at the end of the quoted passage is factually incorrect. Specifically, on May 5, 2020 (the same day that Plaintiff's counsel emailed Stracher with the email contact information of the eight people Plaintiff had identified), Defendant Russell emailed former Special Agent Pedro Hernandez *at his address in Texas*. *See* annexed Declaration of Pedro T. Hernandez & Exh. A. Russell's email stated as follows:

> Dear Mr. Hernandez,
>
> We are preparing to broadcast a documentary television series concerning the kidnapping and murder of DEA agent Kiki Camarena. In connection with that series, witnesses make certain allegations against James Kuykendall. Specifically, witnesses claim that:
>
> Mr. Kuykendall received large sums of money from Ernesto Fonseca Carrillo and/or known criminal associates of Carrillo in Guadalajara on at least two occasions in 1984 and 1985;
>
> Mr. Kuykendall received money from state police commander Gabriel Gonzalez Gonzalez on three occasions in the 1980s at the U.S. Consulate in Guadalajara;
>
> Mr. Kuykendall was present in early 1985 at a meeting held at the Motor Hotel de las Americas where the abduction of Kiki Camarena was planned. In addition, Mr. Kuykendall provided information to Guadalajara Cartel operatives about what Mr. Camarena was wearing and what time he was expected to leave the consulate building on the day he was kidnapped.
>
> If you wish to comment on these allegations, please contact me at this email no later than 5:30 pm PDT on Wednesday, May 6.
>
> Respectfully,
>
> - Tiller Russell

Hernandez Decl. Exh. A. Mr. Hernandez responded to Mr. Russell via email the next day, again from his address in Texas, writing as follows:

> Sirs:
>
> Reference is made to your email of 04/05/2020 regards allegations made about Mr. James Kuykendall. For background about me I was in Guadalajara from 1979 to the end of 1983. I am also a godfather to Kiki's oldest son, Enrique "kikito" Camarena. I knew Kiki since we were at the DEA academy and subsequently we worked together in Guadalajara.

Correction to Plaintiff's Opposition to Motion to Dismiss
*Kuykendall v. Amazon Studios LLC, et al.*, No. 5:20-cv-219 (S.D. Tex.)
Page 2

> Mr. Kuykendall arrived in 1982 and designated as the SAIC of the Guadalajara R.O. At the time of his arrival Kiki and I had been on post working alone until newly arrived Wilbur "Butch" Sears, whom also arrived in 1982. I have personally known Mr. Kuykendall since 1971/72 time frame.
>
> As to the allegations, I have known about them since they first started in the gossip column. I can in good faith tell you that these rumors are lies. Lies perpetrated by persons wanting to gain favor and possibly protection and immunity from procecution. [sic]
>
> If your "witnesses" had brought this up to any good and responsible DEA agent, there would have been a report written about it and an investigation conducted by internal affairs. If, "I say if" some of your witnesses are the same as testified at the trials against some cartel members then you know that their credibility was in question. If you do your due diligence you will find that James is known and respected as an agent and would not do or think about doing any of the allegations, especially of the man that Kiki was and the relationship they had established.
>
> As a side note, I will tell you that it is not uncommon for traffickers and or informants to counterattack and create doubt with lies and innuendos to hurt someone's reputation.
>
> I remain,
>
> Pedro T. Hernandez

Hernandez Decl. Exh. A. In the third email in the chain, Mr. Russell acknowledged receipt of Mr. Hernandez's email later on May 6, 2020. *Id.* According to Mr. Hernandez, he had no further contact or communication with Mr. Russell or anyone else associated with the Show. Hernandez Decl. ¶ 6.

Also on May 5, 2020, Russell sent an email similar to the one he sent to Mr. Hernandez to former DEA official Michael Chavarria *at his address in Texas*. *See* annexed Declaration of Michael Chavarria & Exh. A. Mr. Chavarria responded the next day with a lengthy email sent from his home in Texas, which in pertinent part read as follows:

> In all my years as a Special Agent conducting criminal investigations as both an NIS and DEA Agent, and, while working with host nation counterparts in various countries in Latin America, this is the first I have heard of such an incredible story as it relates to a "Deep-State-Like-

Correction to Plaintiff's Opposition to Motion to Dismiss
*Kuykendall v. Amazon Studios LLC, et al.*, No. 5:20-cv-219 (S.D. Tex.)
Page 3

Conspiracy" involving multiple agents from multiple agencies. My initial reaction was to laugh. And, then, I realized the world we currently live in lends itself to just that type of theoretical, wild plot. And, being a fan of fictional crime stories myself, I am always entertained by the creativity that's out there.

In this particular case, however, you and your associates are preparing a "documentary" which infers a degree of authenticity, accuracy, and veracity. I truly question whether you have done the work to meet that required standard.

I have personally met retired agent, Hector Berrellez, many years ago. I do not know him well enough to have an opinion regarding his reputation or character, nor have I even personally met Mr. James Kuykendall (retired). But, I can and will share some things which I believe should be taken into consideration by you and your colleagues as you prepare to besmirch Mr. Kuykendall's reputation, to which I can attest has been one of dedicated, ethical service....

In short, your upcoming documentary is going to feed into this notion that the "gringos" are just as corrupt as our Mexican neighbors. This is a ridiculous theory, especially in this case where your sources, who appear to have been hand-selected, are providing a particular narrative which suits your pre-disposed belief. If this were a trial, you would be seeking a conviction based solely on circumstantial evidence provided by informants who completely lack credibility. Although likely well-intended, your documentary will do a major injustice to the well-earned reputations of others like James Kuykendall, and also to a well-regarded agency of the Drug Enforcement Administration, whose many employees continue to take risks in order to keep our society safe from drug traffickers and their poison.

My questions to you and your colleagues are as follows:

- Do you actually believe that a federal agent could be paid millions of U.S. dollars in cash and have it kept a secret for all of these years?

- Do you actually believe that if there were witnesses to these payments, they wouldn't have brought this to the attention of others so many years ago?

- Do you actually believe that multiple agents from multiple agencies can keep secrets of this magnitude?

- Do you actually put stock in the words of the very same individuals who have self-incriminated with regard to heinous crimes they have committed?

- If so, your next documentary should focus on alien abductions.

Correction to Plaintiff's Opposition to Motion to Dismiss
*Kuykendall v. Amazon Studios LLC, et al.*, No. 5:20-cv-219 (S.D. Tex.)
Page 4

> Finally, Mr. Russell, I would recommend that you conduct due diligence with regard to the credibility of all individuals and their respective statements as it relates to the material being covered in your documentary. As part of that due diligence, I would refer you to the decision made by a U.S. Federal District Court Judge (Hon. Edward Rafeedie), who agreed to the defense motion for acquittal during the trial of Humberto Alvarez Machain. This case was presented by DEA (with significant involvement of SA Hector Berrellez) and federal prosecutors of the U.S. Attorney's Office. Using strong language, citing the government's "wild speculation," the Judge ruled that the case should be immediately dismissed without even giving the jury an opportunity to hear the government's evidence or witnesses (which I'm assuming are the same witnesses being utilized in your documentary). Being a career federal agent, this is quite rare for a case to be dismissed in the midst of a trial which has already commenced. Please do not misconstrue or misinterpret my comments as an inference to Alvarez Machain's innocence – to the contrary. It has to do entirely with how the case was being presented. I'm referring specifically to the sources for this documentary.

Chavarria Decl. Exh. A. According to Mr. Chavarria, he had no further communication with Mr. Russell or anyone else associated with the Show. Chavarria Decl. ¶ 5.

Finally, it now further appears that in addition to reaching out to Mr. Hernandez and Mr. Chavarria, Russell also reached out on or about May 5, 2020, to at least four of the other persons on the list provided to Stracher by Mr. Kuykendall's counsel.

Dated: April 30, 2021

Respectfully submitted,

By: /s/ F. Franklin Amanat
F. Franklin Amanat, Attorney in Charge*
Greg G. Gutzler*
Megan E. McKenzie*
**DiCELLO LEVITT GUTZLER LLC**
One Grand Central Place
60 East 42nd Street, Suite 2400
New York, NY 10165
Telephone: (646) 933-1000
famanat@dicellolevitt.com

*Counsel for Plaintiff James Kuykendall*
*Admitted Pro Hac Vice

Correction to Plaintiff's Opposition to Motion to Dismiss
*Kuykendall v. Amazon Studios LLC, et al.*, No. 5:20-cv-219 (S.D. Tex.)
Page 5

*Of Counsel*:

    W. Mark Lanier, Texas Bar No. 11934600
    Alex J. Brown, Texas Bar No. 24026964, S.D. Tex. Bar No. 30178
    THE LANIER LAW FIRM
    10940 W. Sam Houston Pkwy. North
    Suite 100
    Houston, TX 77064
    (713) 659-5200
    wml@lanierlawfirm.com
    alex.brown@lanierlawfirm.com

Correction to Plaintiff's Opposition to Motion to Dismiss
*Kuykendall v. Amazon Studios LLC, et al.*, No. 5:20-cv-219 (S.D. Tex.)
Page 6