**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

| | |
|---|---|
| **JAMES KUYKENDALL,** | **Civil Action No. 5:20-cv-00219** |
| *Plaintiff,* | |
| **v.** | |
| **AMAZON STUDIOS, LLC, HECTOR BERRELLEZ, JOHN MASSARIA, GOOD PIXEL PRODUCTIONS, TILLER RUSSELL, and THE INTELLECTUAL PROPERTY CORPORATION,** | |
| *Defendants.* | |

**SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

## **TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................... 1

II.    ARGUMENT ....................................................................................................... 2

     A.    Plaintiff cannot establish specific jurisdiction because Texas was neither the subject of, nor the location of sources for, the allegedly defamatory content. ........................................................................................... 2

          1.    The Series does not concern events or Plaintiff's actions in Texas. ........... 3

          2.    The Series does not rely on Texas sources for the allegedly defamatory statements. ............................................................................. 5

     B.    Plaintiff cannot establish specific jurisdiction because none of the Defendants engaged in "additional conduct" to take advantage of and financially benefit from the distribution of the Series in Texas. ............................. 8

          1.    IPC did not engage in additional conduct to take advantage of and financially benefit from the distribution of the Series in Texas. ................. 9

          2.    Tiller Russell did not engage in additional conduct to take advantage of and financially benefit from the distribution of the Series in Texas. ...................................................................................... 13

          3.    Berellez did not engage in additional conduct to take advantage of and financially benefit from the distribution of the Series in Texas. ........ 15

III.    CONCLUSION .................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                            **Page(s)**

*Brammer Eng'g, Inc. v. E. Wright Mountain Ltd. P'ship,*
    307 F. App'x 845 (5th Cir. 2009)........................................................................7

*Busch v. Viacom Int'l, Inc.,*
    477 F.Supp.2d 764 (N.D. Tex. 2007) ...........................................................11

*Butowsky v. Gottlieb,*
    2020 WL 5797713 (E.D. Tex. 2020) ..............................................................9

*Calder v. Jones,*
    465 U.S. 783 (1984)............................................................................... *passim*

*Clemens v. McNamee,*
    615 F.3d 374 (5th Cir. 2010) ...................................................................5, 6, 8

*Digital Equip. Corp. v. AltaVista Tech., Inc.,*
    960 F. Supp. 456 (D. Mass. 1997) ...............................................................11

*Eatertainment, Inc. v. Archbold,*
    2007 WL 9736218 (S.D. Tex. Dec. 3, 2007).................................................7

*Fielding v. Hubert Burda Media, Inc.,*
    415 F.3d 419 (5th Cir. 2005) ..................................................................4, 5, 6

*Hooda v. WCA Services, Corp.,*
    2011 WL 2182354 (S.D. Tex. Jun. 3, 2011).................................................8

*Indianapolis Colts, Inc. v. Metro. Baltimore Football Club Ltd. P'ship,*
    34 F.3d 410 (7th Cir. 1994) ........................................................................11

*Michiana Easy Livin' Country, Inc. v. Holten,*
    168 S.W.3d 777 (Tex. 2005).................................................................6, 7, 8

*Revell v. Lidov,*
    317 F.3d 467 (5th Cir. 2002) ......................................................................11

*Thomas Jackson Pub., Inc. v. Buckner,*
    625 F. Supp. 1044 (D. Neb. 1985)..............................................................11

*Thoroughbred Legends, LLC v. Walt Disney Co.,*
    2007 WL 9702282 (N.D. Ga. Dec. 4, 2007)................................................12

*TL Int'l, Inc. v. Constenla, S.A.,*
    669 F.3d 493 (5th Cir. 2012) ....................................................................4, 8

*Tonka Corp. v. TMS Ent., Inc.*,
   638 F. Supp. 386 (D. Minn. 1985) ...........................................................................11

*TV Azteca v. Ruiz*,
   490 S.W.3d 29 (Tex. 2016) ................................................................... *passim*

*United Med. Lab'ys, Inc. v. Columbia Broad. Sys., Inc*.,
   256 F. Supp. 570 (D. Or. 1966) ...............................................................................11

*United My Funds, LLC v. Perera*,
   2020 WL 674364 (E.D. Tex. Feb. 11, 2020) ...........................................................8

*Walden v. Fiore*,
   571 U.S. 277 (2014) ..................................................................................................5

*Webster v. Premier Foot Clinic, P.C.*,
   2020 WL 3453744 (S.D. Miss. June 24, 2020) ........................................................7

*Young v. New Haven Advoc.*,
   315 F.3d 256 (4th Cir. 2002) ..................................................................................11

**Statutes**

28 U.S.C. § 1404 ..............................................................................................................1

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(b)(2) ...............................................................1

Defendants Hector Berrellez ("Berrellez"), Tiller Russell ("Russell"), and IPC Television, LLC (sued herein as "The Intellectual Property Corporation") ("IPC") (collectively "Defendants" or "the Dismissal Defendants") respectfully submit this supplemental reply memorandum of law pursuant to this Court's August 12, 2021 Order, Dkt. 80 (the "Order"), and in further support of their motion, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, to dismiss Plaintiff James Kuykendall's Complaint for lack of personal jurisdiction; or, in the alternative, to transfer this case to the Central District of California for the convenience of the parties and witnesses, and in the interest of justice, pursuant to 28 U.S.C. § 1404(a) (the "Motion").

## I.
## INTRODUCTION

In its Order, this Court instructed the parties to engage in limited jurisdictional discovery and ordered Plaintiff to submit supplemental briefing "outlining how each of the Dismissal Defendants engaged in additional conduct to take advantage of and financially benefit from the [Series's] distribution in Texas." Dkt. 80 at 2.   The Court made no findings of fact, no rulings, and certainly did not hold, as Plaintiff contends, that "Plaintiff had successfully provided evidence of 'the relationship among the defendant, the forum, and the litigation' . . . sufficient to establish specific jurisdiction over the Dismissal Defendants taken collectively."  Pl. Supp. 1; *see also id.* ¶ 73.  Nor did the Court request additional briefing on the *Calder* test.

Nevertheless, in his forty-three page Supplemental Memorandum of Law ("Pl. Supp." or "Supplemental Memo"), Plaintiff has taken the opportunity to repeat his arguments for specific jurisdiction under *Calder,* relying on facts that are either false or were known to him prior to the commencement of jurisdictional discovery.   As for demonstrating "additional conduct" by Defendants to take advantage of and financially benefit from the distribution of the Series in Texas, Plaintiff concedes that Defendants did not distribute the Series, did not physically enter Texas to

1

produce and promote the Series, and did not receive any revenue, advertising, or other benefits attributable to Texas from the Series.  Instead, he argues only that Defendants' "involvement" in promoting and marketing the Series nationwide, which was ultimately controlled by Amazon, and their receipt of compensation as producers/participants in the Series, evidences "additional conduct" sufficient to establish specific jurisdiction over them.  But these facts fall woefully short of the additional conduct demonstrating "purposeful availment" of the benefits and protections of Texas's laws.  Indeed, if they did, then any producer or participant in a television series would be subject to specific jurisdiction in every state in the United States, which would violate the Due Process clause and is not the law.

Therefore, for the following reasons, as well as those set forth in their Motion and supporting memoranda, the claims against Defendants should be dismissed for lack of personal jurisdiction, or in the alternative, this case should be transferred to the Central District of California.[1]

## II.
## ARGUMENT

A.  **Plaintiff cannot establish specific jurisdiction because Texas was neither the subject of, nor the location of sources for, the allegedly defamatory content.**

In his Supplemental Memo Plaintiff argues, once again, that this Court has specific jurisdiction under *Calder v. Jones*, 465 U.S. 783, 789-90 (1984).  Defendants will not restate the arguments made in their prior submissions, but refer the Court to those arguments and incorporate them herein.  *See* Dkt. 38-1 and 60.  Instead, Defendants limit their discussion here to correcting

---

[1] Because Plaintiff has voluntarily dismissed his claims against John Massaria, *see* Dkt. 102, his arguments that this case could not have originally been brought in the Central District of California and that all parties have not consented to that venue, is moot.  *See* Dkt. 53 at 23–24.

Plaintiff's factual misstatements and mischaracterizations, and his incorrect interpretation of the law.

### 1.  __The Series does not concern events or Plaintiff's actions in Texas.__

Plaintiff claims that the "defamatory content" in the Series "directly concerns events occurring in Texas as well as Plaintiff's actions in Texas."  Pl. Supp. ¶ 37.  As proof, Plaintiff asserts that the Series references "testimony that Plaintiff provided during the first trial of Ruben Zuno-Arce regarding an interview that Kuykendall . . . conducted with Zuno-Arce in San Antonio in August 1986, including Kuykendall's responses to cross-examination as to why he allowed Zuno-Arce to leave Texas and return to Mexico after that interview rather than having him arrested."  Pl. Supp. ¶ 38.  Plaintiff also contends that Phil Jordan and Hector Berrellez, "in response to questioning from Russell, falsely claim that in his testimony about that San Antonio meeting Kuykendall lied for the Cartel, with whom he was purportedly secretly collaborating." *Id.*; *see also id.* ¶ 40 ("Russell took great pains in the [Series] to emphasize the perjury accusation against Plaintiff relating to the San Antonio meeting.").  According to Plaintiff, this is a "key aspect of the defamation against the Plaintiff."  *Id.* ¶ 39.

Plaintiff's argument, however, misrepresents the actual content of the Series.  The Series does not mention a meeting or interview conducted by Plaintiff of anyone, in Texas or elsewhere. Instead, the only reference in the Series to Plaintiff's interactions with Zuno-Arce concerns an answer Plaintiff gave during cross-examination at Zuno-Arce's trial *in California* about whether Zuno-Arce was a drug dealer.  Specifically, as set forth in Plaintiff's Complaint, the Series includes a single graphic of the following excerpt from Plaintiff's testimony at Zuno-Arce's criminal trial in Los Angeles:

| | |
|---|---|
| Kuykendall: | "I would have to say that I didn't know anything, sir." |
| Examiner: | "There was no evidence that you knew of that [Zuno-Arce] was a member of what has been called the Guadalajara Drug Cartel? That's true, too, sir, isn't it?" |
| Kuykendall: | "Not to my knowledge, no." |
| Examiner: | "You were supervisor to the Guadalajara Office?" |
| Kuykendall: | "Yes" |
| Examiner: | "What years?" |
| Kuykendall: | "From February of '82 until October of '85." |
| Examiner: | "And your basic job there was to find out who was dealing in drugs?" |
| Kuykendall: | "Yes." |

Compl. ¶ 78 (citing Ep. 4, 26:20-27:12). Following the display of this excerpt, Phil Jordan states: "You have a DEA agent, who was the supervisor of Kiki Camarena, testify in federal court that Zuno-Arce was really not in the dope business. I cannot believe that right there and then – that son of a bitch should've been out. He should not have been a DEA agent." *Id.* ¶ 80. After which Hector Berrellez states: "This is Kiki Camarena's supervisor, and he testifies to the fact that Ruben Zuno is not a drug dealer. We are shocked." *Id.* ¶ 81.

The crux of these allegedly defamatory statements has nothing to do with an interview or meeting Plaintiff conducted in Texas, as Plaintiff contends, but with his response to a cross-examination question at a criminal trial in Los Angeles, California. Thus, it has no relevance here to the specific jurisdiction analysis. *See Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 427 (5th Cir. 2005) (no specific jurisdiction where allegedly defamatory statements did not concern plaintiff's activities in the forum state); *see also TL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 500 (5th Cir. 2012) ("[S]pecific jurisdiction only obtains when a plaintiff's claims 'arise out of or relate to' the defendant's purposeful contacts with the forum. Or, as we have put it, 'the plaintiff's cause of action [must] arise[ ] out of or result[ ] from the defendant's forum-related contacts.'") (bracketed material in original).

Plaintiff also argues that Berrellez's description of his arrest of Dr. Humberto Alvarez-Machain in El Paso supports the exercise of specific jurisdiction because it "increases the foreseeability that Russell [*sic*] would be haled into court for the defamatory content of the [Series]." Pl. Supp. ¶ 44. Plaintiff not only misrepresents the length of this scene (it runs for ninety seconds, not three minutes), and improperly attributes Berrellez's statements to Russell, he incorrectly contends that specific jurisdiction may be based on statements that neither refer to him nor allegedly defame him. *See Fielding*, 415 F.3d at 426–27 (where statements concerning Texas "supplied little more than the biographical backdrop for their story's protagonist," court lacked specific jurisdiction); *TV Azteca v. Ruiz*, 490 S.W.3d 29, 48 (Tex. 2016) (no specific jurisdiction under *Calder* where defendant's statements about Texas "did not 'concern[] the [Texas] activities of a [Texas] resident.'") (quoting *Calder*, 465 U.S. at 788) (bracketed material in original).

Finally, specific jurisdiction focuses on the defendant's contacts with the forum, not the plaintiff's. Thus, even if the Series had referenced an interview Plaintiff conducted with Zuno-Arce in San-Antonio – which it does not – this is simply irrelevant to the specific jurisdiction analysis. *See Walden v. Fiore*, 571 U.S. 277, 291 (2014) (to establish specific jurisdiction, "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State.").

### 2. The Series does not rely on Texas sources for the allegedly defamatory statements.

Plaintiff argues that, under *Calder*, "[r]eliance on a source in the forum state to support a defamatory statement is not required." Pl. Supp. ¶ 53. Instead, Plaintiff contends, it is the *failure* to rely on Texas sources that supports specific jurisdiction in this case. *Id.* ¶ 53 (citing *Clemens v. McNamee*, 615 F.3d 374, 379 (5th Cir. 2010)). This is simply wrong. In *Clemens*, the Fifth Circuit held: "We read *Calder* as requiring the plaintiff seeking to assert specific personal jurisdiction over a defendant in a defamation case to show ... the sources relied upon for the article were in the

5

forum state.'" 615 F.3d at 380; *see also Fielding*, 415 F.3d at 426 ("[T]o exercise specific jurisdiction in a libel action, the 'aim' of the plaintiff under the *Calder* test must be demonstrated by showing that ... the sources relied upon for the article were in the forum state.").   Thus, Defendants' alleged failure to rely on two of the eight individuals in Plaintiff's "roadmap to the truth" is irrelevant to the specific jurisdiction analysis, *see* Pl. Supp. ¶ 51, particularly when Mr. Russell did not know where these two men lived, his emails had nothing to do with Texas, and the information they provided was neither substantive, nor directly relevant to the focus of the Series. *See* Dkt. 75 at 2–3; *see also Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 791 (Tex. 2005) (proof of "purposeful availment" cannot be subject to "changes in technology" that make it impossible to identify a person's physical location).

At the same time, Plaintiff argues inconsistently that "Russell's reliance on [Phil] Jordan, a Texas source, to defame Plaintiff in itself fully satisfies *Calder's* 'subject and sources' test." Pl. Supp. ¶ 48.  But, again, Plaintiff misrepresents the content of Mr. Jordan's statements, and falsely asserts that they "directly relate to events in Texas." Pl. Supp. ¶ 49.  In fact, as Plaintiff has alleged in his Complaint, Mr. Jordan's statements actually refer to Plaintiff's testimony in Los Angeles that Zuno-Arce "was really not in the dope business." Compl. ¶ 80.  Thus, the mere fortuity that Mr. Jordan, who was interviewed in California, resides in Texas, is not relevant to the specific jurisdiction analysis where Plaintiff's claims do not arise from any information provided by Mr. Jordan that relates to Texas or to Plaintiff's activities in Texas.  *See* Dkt. 60 at 5.  (citing *Butowsky v. Gottlieb*, 2020 WL 5797713, *10 (E.D. Tex. 2020) (no personal jurisdiction when information provided by Texas source that was "'merely collateral to the focus of the articles'")).[2]

---

[2] Plaintiff's contention that Russell committed perjury is baseless.  *See* Pl. Supp. ¶¶ 45 & 47. Perjury requires a "willful intent to provide false testimony."  *Webster v. Premier Foot Clinic,*

In addition, the fact that Russell sent Plaintiff a letter in Texas, and Plaintiff responded with a general denial and a legal threat, is not sufficient to establish specific jurisdiction. *See Brammer Eng'g, Inc. v. E. Wright Mountain Ltd. P'ship*, 307 F. App'x 845, 848 (5th Cir. 2009) ("[Plaintiff's] allegations that defendants sent communications to it in Louisiana, and requested that [plaintiff] 'provide records' or conduct an audit of its records are the type of merely fortuitous contacts that cannot support personal jurisdiction (*i.e.*, they are contacts resulting from the mere fact that the plaintiff is a resident of the forum state and not from any purposeful act of the defendants directed towards the forum state)."); *Michiana,* 168 S.W.3d at 789 (alleged misrepresentation by defendant in phone conversation with plaintiff was not sufficient to establish specific jurisdiction). The same is true for communications between Plaintiff's attorneys and Defendants' attorney. *See Eatertainment, Inc. v. Archbold*, 2007 WL 9736218, at *3 (S.D. Tex. Dec. 3, 2007) (phone calls between defendants' counsel and plaintiff's Texas-based attorney, and cease and desist letters sent to plaintiff and plaintiff's attorney in Texas, did not support the exercise of personal jurisdiction) (collecting cases).

Plaintiff's argument confuses and conflates the specific jurisdiction analysis with the underlying merits of his defamation claim. *See, e.g.,* Pl. Supp. ¶ 70 (arguing that Russell's "deliberate decision to disregard [actual knowledge of falsity], and to proceed with publication knowing that the false statements about Kuykendall would cause harm to him in Texas, amounted to actual malice."). But Defendants' alleged fault in publishing the allegedly defamatory statements is not relevant to the specific jurisdiction analysis. *See Hooda v. WCA Services, Corp.*,

---

*P.C.*, 2020 WL 3453744, at *3 (S.D. Miss. June 24, 2020) (citing *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)). Here, Russell identified Mr. Jordan as a source in his original declaration, and promptly corrected his mistake by submitting a corrected declaration, *see* Dkt. 38 & 60-3, which evidence a lack of intent to mislead Plaintiff.

2011 WL 2182354, *4 (S.D. Tex. Jun. 3, 2011) (specific jurisdiction may not be based on the underlying merits of a plaintiff's claim "because the non-resident defendant can defeat jurisdiction only by showing that there was no tort."); *Michiana,* 168 S.W.3d at 788 ("Allegations that a tort was committed in Texas satisfy the Texas Long-Arm Statute, but not necessarily the U.S. Constitution; the broad language of the former extends only as far as the latter will permit.").  If it were, a plaintiff could assert jurisdiction over a non-resident defendant in any defamation case simply by claiming defendant failed to speak with sources in the forum.

Instead, "specific jurisdiction only obtains when a plaintiff's claims 'arise out of or relate to' the defendant's purposeful contacts with the forum.'"  *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 500 (5th Cir. 2012); *see also Clemens*, 615 F.3d at 380 (no specific jurisdiction where allegedly defamatory statements about plaintiff, a Texas resident, "did not concern activity in Texas; nor were they made in Texas or directed to Texas any more than residents of any state"); *United My Funds, LLC v. Perera*, 2020 WL 674364, *3 (E.D. Tex. Feb. 11, 2020) (citing *Helicopteros Nationales de Colum., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)) ("Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state.").  Plaintiff may yet have his day in court where he can argue that Defendants acted with actual malice, but he provides no support for his position that specific jurisdiction can be established by a failure to investigate, and Defendants are aware of none.

**B.** **Plaintiff cannot establish specific jurisdiction because none of the Defendants engaged in "additional conduct" to take advantage of and financially benefit from the distribution of the Series in Texas.**

None of the "contacts" identified by Plaintiff in arguing for specific jurisdiction under *Calder* constitute the type of "additional conduct" this Court instructed Plaintiff to outline in order to satisfy the test for specific jurisdiction articulated by the Texas Supreme Court in *TV Azteca v.*

*Ruiz*, and Plaintiff provides no authority otherwise.  *See* Pl. Supp ¶ 83 (arguing, without support, that Russell's conduct, "when taken together with his numerous purposeful contacts with Texas," satisfy the *TV Azteca* test).  In *TV Azteca*, unlike here, the Texas Supreme Court held that Plaintiff satisfied her burden to establish specific jurisdiction by presenting evidence that each defendant: 1) "physically 'entered' into Texas to produce and promote their broadcasts;" 2) "made substantial and successful efforts to distribute their programs and increase their popularity in Texas;" and, 3) "derived substantial revenue and other benefits by selling advertising time to Texas businesses." 490 S.W.3d at 52.[3]  This evidence, the Court held, along with their distribution of the allegedly defamatory broadcast in Texas, demonstrated additional conduct through which defendants "continuously and deliberately exploited' the Texas market" sufficient to establish specific jurisdiction.  *Id.* at 52 (internal citation omitted).  Here, in contrast, the additional conduct Plaintiff identifies falls woefully short of establishing that Defendants "continuously and deliberately exploited the Texas market."  Instead, Plaintiff makes a number of factually false statements about each Defendant's conduct, and fails to demonstrate how each Defendant took advantage of and financially benefitted from the distribution of the Series in Texas.

1.    **IPC did not engage in additional conduct to take advantage of and financially benefit from the distribution of the Series in Texas.**

IPC already demonstrated, and Plaintiff does not dispute, that no IPC employee physically entered Texas to produce or promote the Series.  Dkt. 38-1 at 11.  IPC also demonstrated that it

---

[3] This Court, of course, is not bound by the Texas Supreme Court's interpretation of the limits of personal jurisdiction under the Due Process clause.  *See Butowsky*, 2020 WL 5797713, at *12 n.6 ("'[F]ederal courts are not bound by state court determinations of what the Constitution requires.'") (quoting *Southwest Offset, Inc. v. Hudco Publ'g Co.*, 622 F.2d 149, 152 (5th Cir. 1980)).

did not distribute the Series in Texas or elsewhere.[4]  *Id.*  Although Plaintiff concedes that Amazon

distributed the Series, *see* Pl. Supp. ¶ 88 (IPC's agreement "with Amazon gives IPC the ultimate

responsibility to produce the content of the [Series] and deliver it to Amazon for distribution"), he

contends that IPC "was actively involved" in distributing the Series, *id.* ¶ 99, and has an "interest

in ... how widely the [Series] is distributed."  *Id*. ¶ 95.  Plaintiff provides no specific evidence,

however, of IPC's "involvement" in distributing the Series, but focuses, instead, on IPC's

involvement in Amazon's promotion and marketing of the Series.  *See, e.g.,* Pl. Supp. ¶ 99

("Amazon works with and involves and, you know, appreciates and incorporates input from – that

is meaningful and worthwhile from our partners that we work with.").  Plaintiff does not dispute,

however, that Amazon was the ultimate decision-maker and controlled all promotion and

marketing efforts.  30(b)(6) Deposition of Amazon Studios, LLC (Uri Fleming), dated October 7,

2021 ("Amazon 30(b)(6) Dep."), filed simultaneously herewith as Exhibit 1, 142:17-143:6.  Nor

does Plaintiff identify any promotion or marketing efforts by IPC that targeted Texas.  *Cf. TV*

*Azteca*, 490 S.W.3d at 52 ("Petitioners physically 'entered into' Texas to produce and promote

their broadcasts [and] derived substantial revenue and other benefits by selling advertising to Texas

businesses.").

In fact, as Plaintiff acknowledges in a footnote, the Series was distributed nationwide, and

IPC had no control over where, when, or how it would be viewed.  Pl. Supp. ¶ 95, n.16.  And,

contrary to Plaintiff's assertions, the nationwide distribution of the Series by Amazon is not

sufficient to confer specific jurisdiction over IPC.[5]  If it could, then the constitutional limits on the

---

[4] This alone distinguishes this case from *TV Azteca*, where the two Mexican broadcast company
defendants actually distributed the allegedly defamatory broadcast in Texas.  490 S.W.3d at 51.

[5] The authorities cited by Plaintiff for this proposition are irrelevant because they either do not
stand for the proposition Plaintiff contends, are not defamation cases, and/or predate *Keeton* and

exercise of specific jurisdiction would have no meaning in a defamation case because a defendant could be haled into court in any one of the fifty States in contravention of the Supreme Court's holdings in *Keeton* and *Calder*. *See TV Azteca*, 490 S.W.3d at 46 ("[A] broadcaster's mere knowledge that its programs will be received in another jurisdiction is insufficient to establish that the broadcaster purposefully availed itself of the benefits of conducting activities in that jurisdiction."); *see also Revell v. Lidov*, 317 F.3d 467, 474–75 (5th Cir. 2002) (internet posting that was not specifically directed at Texas could not form basis of personal jurisdiction); *Young v. New Haven Advoc.*, 315 F.3d 256, 262–63 (4th Cir. 2002) (online publication accessible in forum state was insufficient basis for personal jurisdiction because "application of *Calder* in the Internet context requires proof that the out-of-state defendant's Internet activity is expressly targeted at or directed to the forum state"); *Busch v. Viacom Int'l, Inc.*, 477 F. Supp. 2d 764, 772 (N.D. Tex. 2007) (finding no personal jurisdiction in defamation case because "[t]he piece was not directed at viewers of *The Daily Show* in Texas, but was broadcast nationwide" and there was no evidence that Texas was the "focal point"); *Thoroughbred Legends, LLC v. Walt Disney Co.*, 2007 WL 9702282, at *7 n. 4 (N.D. Ga. Dec. 4, 2007) ("Most courts require some form of purposeful action in the forum state beyond mere nationwide broadcast to find personal jurisdiction over a defendant involved in that broadcast."); *id.* (collecting cases).

---

*Calder*. *See Indianapolis Colts, Inc. v. Metro. Baltimore Football Club Ltd. P'ship*, 34 F.3d 410, 411–12 (7th Cir. 1994) (finding specific jurisdiction in trademark cases where damages arose in forum); *Digital Equip. Corp. v. AltaVista Tech., Inc.*, 960 F. Supp. 456, 466 (D. Mass. 1997) (finding specific jurisdiction in trademark case where selling of advertising space related to "the very contract it signed with a Massachusetts company, and integral to the cause of action."); *Tonka Corp. v. TMS Ent., Inc.*, 638 F. Supp. 386, 393 (D. Minn. 1985) (finding venue improper in trademark case and transferring case to California); *Thomas Jackson Pub., Inc. v. Buckner*, 625 F. Supp. 1044, 1046–48 (D. Neb. 1985) (finding specific jurisdiction in copyright case where broadcast at issue was not the deciding factor); *United Med. Lab'ys, Inc. v. Columbia Broad. Sys., Inc.*, 256 F. Supp. 570, 570 (D. Or. 1966) (superseded by *Keeton*).

In addition, it is simply false, as Plaintiff claims, that under its agreement with Amazon,

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████ Pl. Supp. ¶ 96.  Rather, the Amazon-IPC

Production Services Agreement ("PSA") clearly provides that IPC ████████████

████████████████████████████████████████████. *See* PSA, Pl. Supp.

Ex. 19, ¶ 4(a) ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████; *see also* Deposition of Andreas

Olymbiou, dated October 6, 2021 ("A. Olymbiou Dep."), filed simultaneously herewith as Exhibit

2, 16:21–25 ("the business model for IPC is the producing of the film because we get a production

fee, not distribution of the – that's for the networks to make back the – the cost of making the

film."); 17:22–18:1 ("In terms of in the U.S., we're not financially incentivized for viewers.  We,

of course, want the show to do well 'cause we want the good reputation, but in terms of financial

monetization, it doesn't impact us at all.").

Finally, Plaintiff asserts misleadingly that IPC received "an additional premium after

Amazon pursued worldwide distribution of the [Series]," Pl. Supp. ¶ 97, as if that "premium" were

somehow tied to "worldwide distribution," rather than limited foreign distribution outside the

Americas, Europe, Japan, India, Korea, South Africa, Australia and New Zealand, ████████

████████████. PSA ¶ 19(b).  Moreover, ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████. Amazon 30(b)(6) Dep.

141:10-13.  Plaintiff's speculation that IPC could receive such revenues from some unknown third

party for distribution in some unknown place do not constitute continuous and deliberate exploitation of the Texas market sufficient for the exercise of specific jurisdiction under *TV Azteca.*

In short, IPC did not receive any revenue – let alone "substantial revenue" – tied to advertising or the distribution of the Series in Texas. Indeed, if Amazon had decided not to distribute the Series, IPC's production fee would have been exactly the same.[6] Thus, in contrast to the defendants in *TV Azteca*, IPC did not take advantage of or financially benefit from the distribution of the Series in Texas.

2.    **Tiller Russell did not engage in additional conduct to take advantage of and financially benefit from the distribution of the Series in Texas.**

As with IPC, Tiller Russell has already demonstrated, and Plaintiff does not dispute, that he did not enter Texas to produce or promote the Series. Dkt. 38-1 at 6. It is also undisputed that Russell did not distribute the Series. *See* Pl. Supp. ¶ 88. Plaintiff claims, however, that Russell "was involved" in "negotiating a deal with Amazon to fund the project and to distribute the [Series] on its Prime Video streaming platform," and that "one consideration in selecting a distribution partner was the size and breadth of the audience it could provide for the [Series]." *Id.* ¶ 75. Regardless of Russell's involvement in these initial stages of selling the Series to Amazon, the evidence is undisputed that Amazon distributed the Series and that Amazon controlled how the Series was marketed and promoted. Amazon 30(b)(6) Dep. 142:17–143:6.

Although Russell participated in a number of national media appearances for the Series, with one exception Plaintiff does not claim that any of these publications were directed at Texas,

---

[6] ███████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████.

and none of these publications mentioned Plaintiff or any events in Texas.  Pl. Supp. ¶¶ 80–82.  As for the single interview Russell did remotely for the "Ef N' Sonny Show," which was viewed by less than five thousand people, this hardly constitutes the type of "continuous and deliberate exploitation of the Texas market" contemplated by *TV Azteca*.[7]  *See TV Azteca*, 490 S.W.3d at 50–52 (listing fifteen different actions of petitioners' constituting additional conduct).

In addition, Plaintiff again falsely claims that █████████████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████  Pl. Supp. ¶ 76.  In fact, Russell's Executive Producer and Director Agreement with IPC (the "Executive Producer and Director Agreement") clearly states that, ████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████.  Pl. Supp. Ex. 18 ¶ 2.3 ███████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████; ¶ 3.3 █████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████

<hr />

[7] Plaintiff also falsely states that Russell "initiated" this and another wholly unrelated podcast conducted after this lawsuit was filed to promote Russell's Academy Award winning film *The Silk Road*. Pl. Supp. ¶82; *see also* Deposition of Tiller Russell, dated October 4, 2021 ("T. Russell Dep."), Pl. Supp. Ex. 14, 35:12–36:17.

Similarly, Russell signed a side agreement with IPC, pursuant to which 

. *See* Executive Producer and Director Agreement-Tiller Russell-Side Letter, RUSSELL0021-0023, filed simultaneously herewith as Exhibit 3.

, which are purely speculative and unrealized to date.  Amazon (30)(b)(6) Dep. 141:10–13.

Thus, because Russell did not take advantage of or financially benefit from the distribution of the Series in Texas, the exercise of specific jurisdiction over him would be improper.

### 3.   Berrellez did not engage in additional conduct to take advantage of and financially benefit from the distribution of the Series in Texas.

Like IPC and Russell, there is no dispute that Hector Berrellez did not enter Texas to produce or promote the Series, and did not distribute the Series.  Plaintiff argues, however, that because Berrellez was paid to participate in the Series, "he therefore financially benefited from the distribution of the [Series] throughout the United States, including in Texas."  Pl. Supp. ¶ 109.  There is absolutely no support for this proposition, either in fact or in law, nor could there be given the constitutional limitations on specific jurisdiction in a defamation case.  Otherwise, every individual who was compensated for participating in a television series with a nationwide audience could be haled into court in any one of the fifty states.

Although Berrellez spoke to a number of media outlets, Plaintiff does not identify a single interview in which Berrellez participated that referenced Plaintiff or any events in Texas connected to the Series.  In addition, with one exception, none of the interviews were conducted with any media outlet located in Texas.  As for the single outlet Plaintiff claims was located in Texas, Pl. Supp. ¶ 113, Plaintiff provides no evidence to support his claim, and the company's LinkedIn page

indicates it is located in Boca Raton, Florida.[8]   *See* *https://www.linkedin.com/company/valuetainmentmedia/about/*.

Elsewhere, Plaintiff also falsely claims that Berrellez's book was "largely about the same set of events as the [Series]," when  Berrellez testified that it was not, Berrellez Dep., filed simultaneously herewith as Exhibit 4, 19:19–25, and claims without any support that "the promotion and distribution of the [Series] undeniably fueled sales of Berrellez's book."  Pl. Supp. ¶ 110.  Finally, he falsely states that "the release of the book was delayed to coincide with the release of the [Series]."  *Id*.  In fact, Berrellez was *prohibited* from publishing the book until one month after the initial exhibition of the final episode of the Series or June 30, 2020, whichever occurred first.  Berrellez Participation Agreement, Pl. Supp. Ex. 20, ¶ 5.

In sum, Plaintiff presents no evidence that Berrellez engaged in any additional conduct to take advantage of and financially benefit from the distribution of the Series in Texas.  Therefore, the exercise of specific jurisdiction over him would be improper.

### III.
### CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff James Kuykendall's Complaint against them for lack of personal jurisdiction, or in the alternative, transfer this case to the Central District of California.

---

[8] The "support" Plaintiff provides for this contention is his own counsel's question at Berrellez's deposition as to whether Mr. Berrellez recalled "that at the time this show aired, Valuetainment was a company that was based in Dallas, Texas," to which Mr. Berrellez replied, "I don't know that sir."  Deposition of Hector Berrellez, dated October 5, 2021 ("Berrellez Dep."), Pl. Supp. Ex. 15, 49:11–14.

DATED: November 8, 2021

Respectfully submitted,

LAW OFFICES OF CAMERON STRACHER

By: _/s/   Cameron Stracher_____
Cameron Stracher (admitted *pro hac vice*)
NY SBN:  2171080
51 Astor Place, 9th Floor
New York, NY  10003
Telephone: (646) 992-3850
Facsimile: (646) 992-4241
cam@stracherlaw.com

*Attorneys for Tiller Russell, Hector G.*
*Berrellez, and John Massaria*

GILBERTO HINOJOSA AND ASSOCIATES

By: _/s/   Gilberto Hinojosa_____
Gilberto Hinojosa
SBN: 09701100
SDN: 3425
622 E. St. Charles
Brownsville, Texas 78520\
(956) 544-4128

*Attorneys for IPC Television, LLC, Amazon*
*Studios, LLC, Tiller Russell, and Hector G.*
*Berrellez*

HAYNES AND BOONE, LLP

By: _/s/   Laura Lee Prather_____
Laura Lee Prather
SBN: 1623400
SDN: 15442
Alexander B. Lutzky
SBN: 24098022
SDN: 3083952
600 Congress Avenue, Suite 1300
Austin, Texas, 78701
(512) 867-8400
(512) 867-8609 (fax)
Laura.Prather@haynesboone.com
Alex.Lutzky@haynesboone.com

*Attorneys for IPC Television, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of November, 2021, a copy of the foregoing was served upon counsel for all parties to this proceeding through the court's electronic filing system.

_/s/   Laura Lee Prather_____
Laura Lee Prather