United States District Court
Southern District of Texas
**ENTERED**
March 18, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| JAMES KUYKENDALL, § <br> § <br> Plaintiff, § <br> § <br> VS. § <br> § <br> AMAZON STUDIOS LLC *et al.*, § <br> § <br> Defendants. § | CIVIL ACTION NO. 5:20-CV-219 <br> **\*\*SEALED\*\*** |

## ORDER

Before the Court is Amazon Studios, LLC's motion to transfer venue pursuant to 28 U.S.C. § 1404(a) (Dkt. No. 59). Having considered the relevant filings and applicable law, the motion (Dkt. No. 59) is hereby **GRANTED**. Because all of Plaintiff's claims against the remaining Defendants will be transferred (*see* Dkt. No. 131; *infra* Section III), this entire civil action shall be **TRANSFERRED** to the Central District of California, Los Angeles Division.

### I. BACKGROUND

Plaintiff James Kuykendall is a Texas resident and former agent for the Drug Enforcement Administration ("DEA") (Dkt. No. 1 at 8).[1] His lawsuit concerns a streaming television documentary series called *The Last Narc* ("the Show"), which explores the kidnapping and murder of DEA Agent Enrique Camarena (*id.* at 2). The Show is available on Amazon.com, Inc.'s digital streaming service, Prime Video (*id.*

---

[1] All pincites to docket entries refer to CM/ECF's pagination.

at 7).

Essentially, Plaintiff takes issue with his portrayal in the Show. According to Plaintiff, only the Guadalajara Cartel ("the Cartel") kidnapped and killed Agent Camarena (*id.* at 1). But according to the Show, Plaintiff, other American officials, and the Cartel coordinated Agent Camarena's murder, and Plaintiff "deliberately sabotaged" the criminal trial that ensued (*id.* at 2–3). The Show claims Agent Camarena threatened to expose a secret, transnational, deep-state conspiracy (*id.* at 2). Supposedly, the federal government and the Cartel formed a pact to traffic drugs into the United States and use some of the proceeds to fund Nicaraguan Contras (*id.*). To thwart Agent Camarena's potential revelation, the Show avers Plaintiff and the Cartel planned Agent Camarena's abduction, Plaintiff aided and abetted the execution of the plan, and Plaintiff lied during the subsequent murder trial (*id.* at 3). The Show also claims that Plaintiff received bribes from the Cartel (*id.*). In response to his portrayal in the Show, Plaintiff filed this lawsuit (*id.*).

There are four remaining Defendants in this case: Tiller Russell, Hector Berrellez, IPC Television, LLC ("IPC"), and Amazon Studios, LLC ("Amazon Studios") (*id.* at 1). The first three Defendants—Russell, Berrellez, and IPC—created and produced, or starred in, the Show (*id.* at 7–8). Amazon Studios is a TV production and distribution company with its principal place of business in California (*id.* at 7). It is a subsidiary of Amazon.com, Inc., and it produced, published, and distributed the Show through Prime Video (*id.*).

Plaintiff asserts four claims in this diversity action, namely: defamation per

se, defamation *per quod*, intentional infliction of emotional distress, and violation of Plaintiff's right of publicity (*id*. at 36–41). In a separate order, the Court determined it lacked personal jurisdiction over Russell, Berrellez, and IPC and ordered that Plaintiff's claims against them be transferred to the Central District of California (Dkt. No. 131).[2] Amazon Studios now requests a transfer of the claims against it to the Central District of California, Los Angeles Division, pursuant to 28 U.S.C. § 1404(a) (Dkt. No. 59). Plaintiff opposes a transfer (Dkt. No. 64).

## II.  LEGAL STANDARD

Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). This provision authorizes "a discretionary transfer when venue was proper, but another venue was more convenient . . . ." *Franco v. Mabe Trucking Co., Inc.*, 3 F.4th 788, 793 (5th Cir. 2021).

A § 1404(a) transfer can only occur if two requirements are satisfied: (1) the action could have been brought in the transferee court and (2) the convenience of the parties and witnesses and the interest of justice weigh in favor of transfer. *See* 28 U.S.C. § 1404(a); *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The first requirement is satisfied if the transferee court has both personal and subject matter jurisdiction and if it is the proper venue for the action. *Epstein v. Gray Television, Inc.*, No. 3:06-cv-431, 2007 WL 295632, at *3 (W.D. Tex.

---

[2] Amazon Studios did not contest personal jurisdiction (Dkt. No. 39 at 9).

3

Jan. 5, 2007) ("A federal district court is a forum in which suit 'might have been brought' if both jurisdictional and venue requirements are satisfied.").

As for the convenience of the parties and witnesses and the interest of justice, the court considers several public and private interest factors. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). No single factor has dispositive weight, and the list of factors enumerated by the Fifth Circuit is neither exhaustive nor exclusive. *Id.* The public interest factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws." *Id.* The private interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Id.* A plaintiff's choice of venue is not a distinct factor in the § 1404(a) analysis, but "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected. When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer." *Id.*

### III. ANALYSIS

**A. Court in Which the Action Could Have Been Brought**

The Court finds this action could have been brought in the Central District of

4

California. First, diversity jurisdiction would exist as it does in this Court. *See* 28 U.S.C. § 1332(a). Further, venue is proper in the Central District of California because "a substantial part of the events or omissions giving rise to the claim occurred" there. 28 U.S.C. § 1391(b)(2). As Amazon Studios states, and Plaintiff does not contest:

> The Series was developed, produced, and edited in the Central District of California. A majority of the participant interviews, including on[-]camera interviews with Berrellez and the three cartel informants, took place in Los Angeles. The trials of the cartel members accused of Camarena's murder, at which the Plaintiff testified, took place in Los Angeles. Moreover, the Series was primarily created, filmed, and produced in California, and a majority of interviews with the Series' participants were conducted there. Amazon Studios, the Series' distributor, is based in the Los Angeles area and its California-based employees made Amazon Studios' decisions in connection with the Series.

(Dkt. No. 59-1 at 11) (internal citations omitted).

As for personal jurisdiction, Amazon Studios' principal place of business is in California (Dkt. No. 1 at 7). Thus, it is "at home" in California and subject to its general jurisdiction. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (explaining a corporation is at home in its place of incorporation and principal place of business). And, as previously mentioned, all other remaining defendants have been transferred to California after the Court determined the California court would have personal jurisdiction over them. (Dkt. No. 131).

### B. Convenience of the Parties and Witnesses and Interest of Justice

After weighing the public and private interest factors enumerated above, as

well as an additional consideration raised by Plaintiff, the Court finds a transfer to the Central District of California would serve the convenience of the parties and witnesses and further the interest of justice.

### 1. Public Interest Factors

#### *a) Administrative difficulties flowing from court congestion*

This factor considers "not whether transfer will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket." *Hillestad v. LLOG Expl. Co., LLC*, No. 3:17-cv-341, 2018 WL 4938708, at *7 (S.D. Tex. Sept. 20, 2018) (cleaned up), *R. & R. adopted*, 2018 WL 4931783 (S.D. Tex. Oct. 11, 2018). For a twelve-month period ending in December 2021, judges in the Southern District of Texas had a median disposition time of 9 months for civil cases.[3] For the Central District of California, judges had a median disposition time of 4.9 months for civil cases.[4] And the two Districts have substantially similar average times to trial in civil cases.[5] Because the Central District of California disposes of civil cases faster than the Southern District of Texas, this factor weighs in favor of transfer.

#### *b) Local interest in having localized interests decided at home*

Amazon Studios—a California-based entity—asserts "California has an interest in 'adjudicating the integrity' of its own citizens in defamation cases" (Dkt.

---

[3] Administrative Office of the United States Courts, *Federal Court Management Statistics: United States District Courts – National Judicial Caseload Profile* (Dec. 31, 2021), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2021.pdf.

[4] *Id.*

[5] *Id.*

6

No. 59-1 at 14 (quoting *Epstein*, 2007 WL 295632, at *7)). It is true that a district court "has a significant interest in 'policing . . . entities operating within its [district] and engaging in interstate business activities.'" *Siragusa v. Arnold*, No. 3:12-cv-04497, 2013 WL 5462286, at *7 (N.D. Tex. Sept. 16, 2013) (quoting *ExpressJet Airlines, Inc. v. RBC Cap. Mkts. Corp.,* No. 4:09-cv-992, 2009 WL 2244468, at *13 (S.D. Tex. July 27, 2009)). However, it is also true that a district court has an interest in protecting its citizens, like Plaintiff, from "unlawful defamation." *Epstein*, 2007 WL 295632, at *7; *see also ExpressJet Airlines,* 2009 WL 2244468, at *13 (holding a district court "has a strong interest in adjudicating a case involving harm" to an entity within its district). Because California has an interest in adjudicating the behavior of its citizens and Texas has an interest in protecting its citizens from harm, this factor is neutral.

### c) *Familiarity of the forum with the law that will govern the case and avoiding unnecessary conflict of laws problems*

As to the last two factors, assessed together for convenience, Amazon Studios does not conclusively assert whether California or Texas tort law would apply if the matter was transferred (*see* Dkt. No. 59-1 at 14; Dkt. No. 72 at 3, 8). However, Amazon Studios asserts that if Texas law applied, the California district court would be "fully capable" of applying it (Dkt. No. 59-1 at 14; Dkt. No. 72 at 8). Plaintiff asserts that Texas law would apply but admits that while "federal courts in Texas are most familiar with Texas law," California federal courts have the "general ability . . . to apply the law of other States" (Dkt. No. 64 at 22).

Because Texas is the transferor court, the Central District of California will

7

apply Texas's choice-of-law rules if the case is transferred pursuant to § 1404(a). *Yelton v. PHI, Inc.*, 669 F.3d 577, 580 (5th Cir. 2012). Here, neither party has asserted there is a conflict between the state laws of Texas and California or whether, as a result, Texas's choice-of-law rules would need to be employed at all (*see, e.g.*, Dkt. No. 64 at 22 ("[N]o problems of conflict of laws [are] implicated.")). Thus, the Court "cannot conclude that either forum would present problems of conflicts of law or that either forum would be unfamiliar with the law at issue." *Siragusa*, 2013 WL 5462286, at *7; *see also Worldpak Int'l, LLC v. Diablo Valley Packaging, Inc.*, No. 4:08-cv-469, 2009 WL 1708080, at *6 (E.D. Tex. June 16, 2009) ("Absent any discussion on this issue by the parties in their briefs, the Court declines to speculate on the question of which state's law will apply in this diversity action. Accordingly, this factor is neutral."). Therefore, these factors are neutral.

Overall, of the four public interest factors, one weighs in favor of transfer, and three are neutral. Because the one factor weighing in favor of transfer—administrative difficulties flowing from court congestion—should, alone, not outweigh the other public interest factors, the Court concludes the public interest factors weigh neither for, nor against, transfer. *See Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 871 (E.D. Tex. 2012).

### 2. Private Interest Factors

#### *a) Relative ease of access to sources of proof*

Regarding the "access to sources of proof" factor, Amazon Studios asserts its "principal studios and corporate headquarters are located in . . . the Los Angeles

metropolitan area" and all of its "actions and decisions in connection with the [Show] were performed by employees based out of its California offices" (Dkt. No. 72 at 8). Thus, "California is more convenient for production of key records," and "to the extent paper files exist, they are located in [Amazon Studios'] California offices" (Dkt. No. 59-1 at 12; Dkt. No. 72 at 8). Amazon Studios notes the paper files "may contain communications and other documents about Amazon Studios' distribution of the [Show]" (Dkt. No. 59-2 at 2).

Plaintiff, with no citation to case law, asserts this factor should apply only to sources of proof held by non-parties (Dkt. No. 64 at 18).[6] On this point, Plaintiff notes there are two main non-party sources of information: medical records held in Texas, which are "germane to his damages claim," and the DEA, "which possesses documents relating to the murder of Agent Camarena and the ensuing investigation" (*id.*). But according to Plaintiff's own complaint, Agent Camarena's murder was investigated, at least in part, out of the DEA's Los Angeles office (Dkt. No. 1 at 11–12). So, some, if not all, of the DEA's relevant documents are likely located in the Central District of California.

Further, as discussed below, Amazon Studios' three co-defendants will be

---

[6] Plaintiff argues that the ease of modern electronic document production should nullify or diminish any findings of convenience under this factor (Dkt. No. 64 at 18–19). But the Fifth Circuit has refuted this argument: "That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." *Volkswagen II*, 545 F.3d at 316. Further, Plaintiff argues this factor pertains only to the ease of access to sources of proof, as opposed to the location of the sources of proof (Dkt. No. 64 at 18). The soundness of this distinction is questionable, as ease of access often correlates to location of access. In fact, when assessing this factor, the Fifth Circuit has specifically looked to the *location* of documents and physical evidence. *See Volkswagen II*, 545 F.3d at 316.

9

litigating Plaintiff's claims in the Central District of California. These co-defendants have significant, case-specific ties to the transferee forum and have access to certain records held in California (*see* Dkt. No. 59-1 at 12). Because more records can be found in California, this factor weighs in favor of transfer.

### b) *Availability of compulsory process to secure the attendance of witnesses*

For this factor, Amazon Studios notes that several non-party witnesses—including two of its own—are located in California (Dkt. No. 59-1 at 12; Dkt. No. 72 at 7). Plaintiff, referencing the parties' initial disclosures, counters that "the majority of the witnesses in this case, including non-party witnesses, live in (or can be contacted in) Texas rather than California" (Dkt. No. 64 at 17). Because employers can compel their employees to appear at trial without using the Court's compulsory process, the Court will focus on potential witnesses who maintain no employer-employee relationship with the parties. *See Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 711 (S.D. Tex. 2011). Further, because this factor properly centers "key" witnesses, convenience considerations for liability witnesses will be given more weight than those of damages witnesses. *Epstein*, 2007 WL 295632, at *5 ("In a libel case, the key nonparty witnesses are those having knowledge relevant to the liability of the defendant.").

Of the 52 potential witnesses in Plaintiff's initial disclosures,[7] 33 live in Texas, 7 live in California, and 12 live in other, or unknown, states (Dkt. No. 64 at 16). Of

---

[7] The Court excludes Plaintiff himself in this count.

the 40 Texas and California witnesses, 11 are non-party liability witnesses, with 5 residing in Texas and 6 residing in California (Dkt. 64-2 at 2–13; Dkt. No. 72 at 6). Amazon Studios' initial disclosures add one California-based, non-party liability witness to the count (Dkt. No. 64-3 at 7).[8]

Thus, there are 7 California-based nonparty liability witnesses and 5 Texas-based nonparty liability witnesses. At first blush, it appears this factor weighs in favor of California. Nonetheless, the Court recognizes that Plaintiff has disclosed 28 Texas-based damages witnesses,[9] who significantly outnumber the 12 liability witnesses. After careful consideration, the Court will weigh this factor neutrally.

### c) *Cost of attendance for willing witnesses*

Amazon Studios argues that transferring this matter to California would reduce the costs for most party witnesses, as its offices and many of its employees who may serve as potential witnesses are located there (Dkt. No. 59-1 at 12; Dkt. No. 72 at 7). It also notes that co-defendant Berrellez resides in California, and the offices and employees of co-defendant IPC are also in California (Dkt. No. 59-1 at 12; Dkt. No. 72 at 6–7). Plaintiff counters that "Amazon" is "the fourth largest company in the world, with a market capitalization of almost $1.7 trillion . . . [and] has the resources to defend itself no matter where suit is brought against it" (Dkt. No. 64 at 15).[10] In

---

[8] Because neither party alleged the locations of the other defendants' non-party witnesses, the Court declines to address the issue.

[9] As described by Amazon Studios: "17 are various doctors, including two dermatologists and three different general practitioners, slated to apparently testify as to Plaintiff's 'physical, mental, and emotional conditions . . . resulting from Defendants' actions.' . . . [and] another 11 of the 34 Texas-based residents are 'Plaintiff's friends and family members'" (Dkt. No. 72 at 6).

[10] Plaintiff also argues that Amazon Studios is represented by a law firm with offices across the country

11

contrast, Plaintiff, as "an 84[-]year-old private citizen [of Texas] with significant health issues and limited resources," should not be forced to litigate outside of Texas (*id.* at 16). Amazon Studios protests Plaintiff's conflation of Amazon Studios with its corporate parent, Amazon.com, Inc., and notes any cost and inconvenience to Plaintiff can be reduced by conducting his deposition *de bene esse* (Dkt. No. 72 at 7).

Amazon Studios is correct in that a transfer to California would reduce the cost of attendance for most individuals and entities implicated in his matter. As to Plaintiff's argument about the size and wealth of "Amazon," Plaintiff is clearly referencing Amazon Studios' parent company, Amazon.com, Inc. However, Plaintiff cites no case law that permits the Court to consider the resources of a parent company in a § 1404(a) analysis. Further, because "[a] bedrock principle of corporate law is that 'a parent corporation . . . is not liable' for actions taken by its subsidiaries," the Court questions the propriety of including Amazon.com, Inc., in its analysis. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006) (quoting *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)). Thus, the Court will give no weight to Plaintiff's argument about Amazon.com, Inc.'s resources.

Finally, the Court agrees that, given Plaintiff's age and health concerns, travel to California from Texas will pose an inconvenience to him. While Plaintiff is willing to be deposed *de bene esse*, this arrangement cannot fully replace Plaintiff's opportunity to participate, in-person, in a potential trial. Nevertheless, because

---

and, thus, would not be inconvenienced by litigating in Texas (Dkt. No. 64 at 15–16). However, "the convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a)." *Volkswagen I*, 371 F.3d at 206.

Berrellez and numerous IPC and Amazon Studios employees have been identified as potential witnesses in this case, California would, overall, be more convenient and less costly. This factor weighs in favor of transfer.

### d) *All other practical problems that make trial of a case easy, expeditious, and inexpensive*

Because Plaintiff's claims against three other defendants will be litigated in California, this factor heavily weighs in favor of transfer: "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960). "[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice." *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*Volkswagen III*") (applying the Fifth Circuit's transfer test). "Where related litigation is pending in the transferee court, the 'interest of justice' may dictate transfer notwithstanding *any* inconvenience to the parties and witnesses." *Doubletree Partners, LP v. Land Am. Am. Title Co.*, No. 3:08-cv-1547, 2008 WL 5119599, at *6 (N.D. Tex. Dec. 3, 2008) (emphasis added). In this case, a transfer will reduce scheduling conflicts and some duplicative discovery, motion practice, and damages calculations.[11] *See Stingray*

---

[11] The Court notes that even though Plaintiff asserted the same tort claims against Amazon Studios and its three co-defendants, different state laws may apply to these claims because of the statutes by which they were transferred. After a § 1404(a) transfer, the transferee court must apply the state law of a transferor court, including its choice-of-law rules. *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964). However, after a § 1406(a) and § 1631 transfer due to improper venue or lack of personal jurisdiction, the transferee court applies whatever law it would have applied had the action properly commenced there. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Am. Eurocopter Corp.*, 692 F.3d 405, 408 n.3 (5th Cir. 2012); *Jackson v. W. Telemarketing Corp. Outbound*, 245 F.3d 518, 523 (5th Cir.

13

*Music USA, Inc. v. Music Choice*, No. 2:16-cv-964, 2017 WL 1022741, at *4 (E.D. Tex. Mar. 16, 2017). Therefore, this factor weighs strongly in favor of transfer.

Thus, of the four private interest factors, three weigh in favor of transfer and one weighs neutrally. Because most of the claims have already been transferred to the Central District of California (*see* Dkt. No. 131), the Court concludes these factors weigh heavily in favor of transfer.

### 3. Plaintiff's Additional Argument

In addition to the public and private interest factors, Plaintiff raises another argument: He alleges Amazon Studios seeks transfer because the Ninth Circuit will apply "more favorable law" (Dkt. No. 64 at 6–10). Specifically, Plaintiff is concerned with the applicability of the Texas Citizens Participation Act ("TCPA")[12] in federal courts (*id.* at 7). He notes that the TCPA "imposes various procedural requirements and burden-shifting hurdles on certain plaintiffs bringing defamation claims in Texas state courts," and that there is a circuit split about the TCPA's applicability in federal courts (*id.* at 7–8). In the Fifth Circuit, the TCPA is procedural under the *Erie* doctrine and does not apply to diversity suits in federal court. *See Klocke v. Watson*, 936 F.3d 240, 244–48 (5th Cir. 2019). However, in an unpublished decision, the Ninth Circuit held the TCPA was substantive and applies to Texas defamation claims asserted in federal court. *See Clifford v. Trump*, 818 F. App'x. 746, 747 (9th Cir. 2020). Plaintiff avers Amazon Studios seeks transfer to "avail itself of the TCPA to at least

---

2001). But a transfer of all claims to the same forum will still result in increased convenience and judicial economy, as discussed above.

[12] Tex. Civ. Prac. & Rem. Code §§ 27.001 *et seq.*

14

delay or limit its liability (or else make Plaintiff's life more difficult)" (Dkt. No. 64 at 7–8). Therefore, Plaintiff urges denying transfer because the Supreme Court, in *Van Dusen v. Barrack*, "rooted the requirement of outcome neutrality in the legislative history of 28 U.S.C. § 1404(a)" (*id.* at 10 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 636–37 (1964))).

Plaintiff's reliance on *Van Dusen* is unpersuasive. In *Van Dusen*, the Supreme Court held that where a case is transferred under § 1404(a), the transferee court must apply the state law that would have been applied if there had been no change of venue. *Van Dusen*, 376 U.S. at 639. The Supreme Court's analysis focused exclusively on the prejudice a plaintiff might encounter if a § 1404(a) transfer was accompanied by a change in *state law*. *Id.* at 634–36. It held that, concerning the application of state law, a change of venue under § 1404(a) should generally be "but a change of courtrooms." *Id.* at 639. It also noted it was "only concerned here with those state laws of the transferor State which would significantly affect the outcome of the case." *Id.* at 639 n.40.

Plaintiff asserts that, under *Van Dusen*, "the mere possibility that a venue transfer could result in a change of law prejudicial to Plaintiff *requires* the Court to deny the motion" (Dkt. No. 64 at 9) (emphasis added). But *Van Dusen* articulated no such holding.[13] *Van Dusen*, 376 U.S. at 639. Furthermore, the rule proffered by Plaintiff is too absolutist, as it is at odds with the flexibility and discretion the Court

---

[13] In fact, the Supreme Court stated that, by construing § 1404(a) to maintain the applicability of transferor state law, it rejected plaintiff's argument that transfers should be denied based on prejudicial changes in state law. *See Van Dusen*, 376 U.S. at 639.

15

enjoys when it evaluates § 1404(a) motions to transfer.

Plaintiff's somewhat disjointed arguments under *Van Dusen* boil down to the following proposition: In evaluating this transfer request under § 1404(a), the Court must consider whether Plaintiff would be disadvantaged by a change in *federal law*, in the form of varying applications of the *Erie* doctrine (*see* Dkt. No. 64 at 6–10). But this scenario is not addressed by *Van Dusen*. Rather, *Van Dusen* focused on maintaining the consistency of *state law*. Plaintiff cites no other relevant case law to indicate the *Van Dusen* logic applies to the federal laws of the transferor and transferee courts.

But even assuming *Van Dusen*'s reasoning could be extended to the circuit split at issue here, it is unclear that a transfer "would significantly affect the outcome of the case" or prejudice Plaintiff in any way. *Van Dusen*, 376 U.S. at 639 n.40. For example, Plaintiff does not specifically allege whether, or how, his claims would be prejudiced by the application of the TCPA (*see* Dkt. No. 64 at 7 ("Of course, the notion that this is an abusive SLAPP suit [which the TCPA was designed to prevent] is beyond fanciful."); *see also id.* at 7–8 (application of the TCPA might "limit [Amazon Studios'] liability" but might also simply "delay [the proceedings] . . . or else make Plaintiff's life more difficult")). Nor does Plaintiff adequately brief whether the California court would apply the TCPA at all (*see* Dkt. No. 64 at 9 ("It's not entirely clear whether, under *Van Dusen*, the transferee court Amazon seeks would be obliged to apply Texas law as it has been interpreted in the transferor circuit (*i.e.*, *Klocke*) or whether it could apply Texas law as it has been construed by its own circuit (*i.e.*,

16

*Clifford*), whose rulings presumably bind it.")). Nor does he address the non-precedential nature of the Ninth Circuit's decision in *Clifford*. At bottom, Plaintiff's reliance on *Van Dusen* is strained and relies on uncertain and speculative outcomes. The Court will give this argument no weight in evaluating whether the interests of justice favor transfer.

In summary, the public interest factors weigh neutrally, and the private interest factors weigh strongly in favor of transfer. *See supra* Section III.B. Thus, the transferee venue, the Central District of California, is clearly more convenient than the venue chosen by Plaintiff, and there is good cause to grant the transfer.

## IV. CONCLUSION

For the foregoing reasons, Amazon Studios' motion to transfer venue pursuant to 28 U.S.C. § 1404(a) (Dkt. No. 59) is **GRANTED**. At this juncture, the Court has ruled that all of Plaintiff's claims against the remaining Defendants should be transferred to the transferee court. Therefore, the Clerk of Court is **DIRECTED** to **TRANSFER** this entire civil action to the Central District of California, Los Angeles Division. After transferring this action, the Clerk of Court shall **CLOSE** this case. Finally, this Order will initially be filed under seal because it will be docketed in conjunction with the sealed Order in Dkt. No. 131. However, if Dkt. No. 131 is unsealed, in part or in full, the Clerk of Court shall **UNSEAL** this Order.

It is so **ORDERED**.

**SIGNED** March 18, 2022.

_____
Marina Garcia Marmolejo
United States District Judge